# EXHIBIT A

## COMMONWEALTH OF KENTUCKY
## FAYETTE CIRCUIT COURT
### DIVISION _3_
### CIVIL ACTION NO. _15 CI 4557_

MARTIN LUFTMAN and
VIRGINIA LUFTMAN

PLAINTIFFS

## COMPLAINT

v.

LABORATORY FOR KIDNEY
PATHOLOGY, INC.
Serve:

DEFENDANTS

and

LILIA MAURICIO, M.D.
Serve:


Comes the Plaintiffs, Martin Luftman and Virginia Luftman, by counsel, for their Complaint state as follows:

### PARTIES

1.     Plaintiff, Martin Luftman, is an individual who resides in Lexington, Fayette County, Kentucky.

2.     Plaintiff, Virginia Luftman, is an individual who resides in Lexington, Fayette County, Kentucky.

3.     Defendant, Laboratory for Kidney Pathology, Inc., is and was, at all times relevant hereto, a foreign corporation that solicits and transacts business in Kentucky.  Its principal place of business is located at 1916 Patterson Street,

Nashville, Tennessee 37203, and its registered agent is Robert G. Horn, M.D. at

3530 John Allen Road, Cornersville, Tennessee 37047. Pursuant to the Long Arm

Statute, KRS 452.210, the Kentucky Secretary of State is deemed to be its statutory

agent.

    4.    Defendant, Lilia Mauricio, M.D., is an individual who, upon

information and belief, resides in Nashville, Tennessee and, at all relevant times,

was an employee, agent, servant or representative of Defendant, Laboratory for

Kidney Pathology, Inc., in Nashville, Tennessee. Pursuant to the Long Arm

Statute, KRS 452.210, the Kentucky Secretary of State is deemed to be her

statutory agent.

## JURISDICTION

    5.    This Court has subject matter jurisdiction over defendants because

this cause of action involves medical care and treatment rendered in Fayette

County, Kentucky. Plaintiffs are entitled to compensation for their injuries in

excess of the minimum amount necessary to establish jurisdiction in this Court.

    6.    Venue is proper in this Court because a substantial part of the acts or

omissions giving rise to this litigation occurred in Fayette County, Kentucky

## FACTS

    7.    On or about, March 4, 2014, Martin Luftman underwent a kidney

biopsy and Martin Luftman's physician, Thomas W. Ferguson, M.D., sent the

pathology slides to the Laboratory for Kidney Pathology, Inc., in Nashville,

Tennessee.

8.     At all relevant times, Defendants held themselves out to the public as skilled and well qualified specialists in the evaluation of kidney biopsies.

9.     Defendants accepted Martin Luftman's pathology samples and, on or about March 6, 2014, Defendant Mauricio signed a "Kidney Biopsy Report" diagnosing Martin Luftman with "Early/Mild Low Grade Focal Segmental Glomerulosclerosis."

10.     Defendants sent their "Kidney Biopsy Report" to Martin Luftman's physician, Thomas W. Ferguson, M.D., in Lexington, Fayette County, Kentucky, knowing that the report would be the basis for Martin Luftman's further treatment in Lexington, Fayette County, Kentucky.

11.     In reliance on Defendants' diagnostic report, Martin Luftman's physicians began a course of treatment for the incorrect diagnosis.

12.     Martin Luftman was symptom-free in March 2014, but his physical condition began to deteriorate over the following months. His resulting disability required him to limit his medical practice in the fall of 2014, and ultimately forced Martin Luftman to close his medical practice in January 2015.

13.     In December 2014, the Luftmans contacted the Laboratory for Kidney Pathology, Inc. and asked that it send a copy of Martin Luftman's records and pathology slides to Mayo Clinic.

14.     Upon information and belief, on December 23, 2014, Yihan Wang, M.D., with the Laboratory for Kidney Pathology, Inc. reviewed Martin Luftman's

3

pathology slides and determined that he needed to speak with Defendant Mauricio before the records and slides were sent to Mayo Clinic

15.   On or about January 5, 2016, Defendant Mauricio signed an amended report with a "Supplemental Diagnosis" of "Early Lambda Amyloidosis." The amended report was faxed to Dr. Ferguson the same day.

16.   On or about January 5, 2016, Martin Luftman called the Laboratory for Kidney Pathology, Inc. and spoke with Dr. Mauricio.

17.   On or about January 7, 2016, Martin Luftman called the Laboratory for Kidney Pathology, Inc. to inquire whether his pathology slides were sent to Mayo Clinic. At the direction of Dr. Mauricio, the Laboratory for Kidney Pathology, Inc. mailed the pathology slides to Mayo Clinic that day.

## COUNT I

## NEGLIGENCE OF THE LABORATORY FOR KIDNEY PATHOLOGY INC.

18.   Plaintiffs adopt and incorporate by reference as fully set forth herein each and every statement made in paragraphs 1 through 17 above.

19.   Defendant, Laboratory for Kidney Pathology, Inc., provided care to Martin Luftman negligently, carelessly, and in a marked deviation from the standard of care, in the following ways, among others:

a.   failure to properly evaluate Martin Luftman's kidney biopsy slides;

b.   failure to properly diagnose Martin Luftman's amyloidosis; and,

4

      c.      upon learning of the error, failure to timely inform Martin

Luftman of Defendants' incorrect diagnosis; and

      d.      other negligent acts.

20.    As a direct and proximate result of the negligence, carelessness, and marked deviation of the standard of care of Defendant, Laboratory for Kidney Pathology, Inc., acting by and through its agents, servants, and/or employees, including but not limited to, Lilia Mauricio, M.D., as described herein, Martin Luftman suffered permanent physical injuries, incurred medical expenses and will in the future incur medical expenses, suffered physical and mental pain and suffering, sustained emotional distress, has lost wages, and his power to labor and earn money has been permanently impaired.

## COUNT II

### NEGLIGENCE OF LILIA MAURICIO, M.D.

21.    Plaintiffs adopt and incorporate by reference as fully set forth herein each and every statement made in paragraphs 1 through 20 above.

22.    Defendant, Lilia Mauricio, M.D., provided care to Martin Luftman negligently, carelessly, and in a marked deviation from the standard of care, in the following ways, among others:

      a.      failure to properly evaluate Martin Luftman's kidney biopsy

slides;

      b.      failure to properly diagnose Martin Luftman's amyloidosis;

and,

5

    c.      upon learning of the error, failure to timely inform Martin

             Luftman of Defendants' incorrect diagnosis; and

    d.      other negligent acts.

23.    As a direct and proximate result of the negligence, carelessness, and marked deviation of the standard of care of Defendant, Lilia Mauricio, M.D., as described herein, Martin Luftman suffered permanent physical injuries, incurred medical expenses and will in the future incur medical expenses, suffered physical and mental pain and suffering, sustained emotional distress, has lost wages, and his power to labor and earn money has been permanently impaired.

## COUNT III

## LOSS OF CONSORTIUM

24.    Plaintiffs adopt and incorporate by reference as fully set forth herein each and every statement made in paragraphs 1 through 23 above.

25.    As a direct and proximate result of the negligence of the Defendants, Virginia Luftman has suffered a loss of the services, assistance, aid, society, companionship, and conjugal relationship of Martin Luftman.

6

WHEREFORE, Plaintiffs, Martin Luftman and Virginia Luftman, demand:

1. Judgment against Defendants, Laboratory for Kidney Pathology, Inc. and Lilia Mauricio, M.D., for an award that is fair and reasonable so as to compensate them for the damages described herein;

2. For their costs herein expended;

3. Trial by jury; and,

4. Any and all other relief to which they may be entitled.


Douglass Farnsley
J. Brittany Cross Carlson
STITES & HARBISON, PLLC
400 West Market Street, Suite 1800
Louisville, Kentucky 40202
Telephone: (502) 587-3400
dfarnsely@stites.com
bcarlson@stites.com

*Counsel for Plaintiffs*

1059840:2:LOUISVILLE

| AOC-105                    Doc. Code: CI | | Case No. | _15 CI 4557_ |
| Rev. 1-07 | | | |
| Page 1 of 1 | CIVIL SUMMONS | Court | ☑ Circuit ☐ District |
| Commonwealth of Kentucky | | | |
| Court of Justice   www.courts.ky.gov | | County | FAYETTE |
| CR 4.02; CR Official Form 1 | | | |

**PLAINTIFF**

MARTIN LUFTMAN and VIRGINIA LUFTMAN

VS.

**DEFENDANT**

LABORATORY FOR KIDNEY PATHOLOGY, INC. and LILIA MAURICIO, M.D.

**Service of Process Agent for Defendant:**

SERVE:

LILIA MAURICIO, M.D.

c/o LABORATORY FOR KIDNEY PATHOLOGY, INC.

1916 PATTERSON STREET, SUITE 501, NASHVILLE, TN 37203-2153

**THE COMMONWEALTH OF KENTUCKY**
**TO THE ABOVE-NAMED DEFENDANT(S):**

You are hereby notified a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or** by **an attorney on your behalf** within **20 days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached Complaint.

The name(s) and address(es) of the party or parties demanding relief against you are shown on the document delivered to you with this Summons.

Date: _____, 2____

DEC 1 6 2015

VINCENT RIGGS, CLERK
FAYETTE CIRCUIT COURT            _P. Clark_    Clerk
CIVIL DIVISION                                     D.C.
120 N. LIMESTONE STREET G103
LEXINGTON, KENTUCKY 40507

---

**Proof of Service**

This Summons was served by delivering a true copy and the Complaint (or other initiating document) to:

_____

this _____ day of _____, 2_____.

Served by: _____

_____ Title

| AOC-105          Doc. Code: CI | | Case No. | _15 CI4557_ |
| Rev. 1-07 | | Court | ☑ Circuit ☐ District |
| Page 1 of 1<br>Commonwealth of Kentucky<br>Court of Justice   www.courts.ky.gov<br>CR 4.02; CR Official Form 1 | **CIVIL SUMMONS** | County | FAYETTE |

PLAINTIFF

MARTIN LUFTMAN and VIRGINIA LUFTMAN

VS.

DEFENDANT

LABORATORY FOR KIDNEY PATHOLOGY, INC. and LILIA MAURICIO, M.D.

**Service of Process Agent for Defendant:**

SERVE:
DR. ROBERT G. HORN

3530 JOHN ALLEN ROAD, CORNERSVILLE, TN 37047-5303

REGISTERED AGENT FOR LABORATORY FOR KIDNEY PATHOLOGY, INC.

**THE COMMONWEALTH OF KENTUCKY**
**TO THE ABOVE-NAMED DEFENDANT(S):**

You are hereby notified a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or** by **an attorney on your behalf** within **20 days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached Complaint.

The name(s) and address(es) of the party or parties demanding relief against you are shown on the document delivered to you with this Summons.

Date:        DEC 1 6 2015²

VINCENT RIGGS, CLERK
FAYETTE CIRCUIT COURT
CIVIL DIVISION                                    Clerk
120 N. LIMESTONE STREET C103        *P. Owens* D.C.
LEXINGTON, KENTUCKY 40507

---

**Proof of Service**

This Summons was served by delivering a true copy and the Complaint (or other initiating document) to:

_____

this _____ day of _____, 2_____

Served by: _____

_____Title

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
DIVISION III
CIVIL ACTION NO. 15-CI-4557

FILED
ATTEST, VINCENT RIGGS, CLERK
DEC 2 9 2015
FAYETTE CIRCUIT CLERK
BY_____ DEPUTY

MARTIN LUFTMAN and
VIRGINIA LUFTMAN                                                    PLAINTIFFS


V.   **PUTATIVE DEFENDANTS, LABORATORY FOR KIDNEY PATHOLOGY,
INC., AND LILIA MAURICIO, M.D.'S JOINT MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION**

LABORATORY FOR KIDNEY PATHOLOGY, INC.;
and LILIA MAURICIO, M.D.                                            DEFENDANTS

* * * * * * * *

Come now the Putative Defendants, Laboratory for Kidney Pathology, Inc., and Lilia
Mauricio, M.D., by and through counsel, and without waiving their rights, without subjecting
themselves to personal jurisdiction by virtue of this appearance, and without waiving their ability
to further challenge this action under CR 8 and CR 12, hereby jointly move this Court to dismiss
the claims made against them by the Plaintiffs for lack of personal jurisdiction.  A Supporting
Memorandum of Law is filed contemporaneously herewith.


**NOTICE**

Please take Notice that this Motion will come on for hearing before the Fayette Circuit
Court, Division III, on Friday, January 8th, at 1:00 p.m., or as soon thereafter as counsel of record
may be heard.


1

Respectfully submitted,

**FULKERSON, KINKEL & MARRS, PLLC**
239 North Broadway
Lexington, Kentucky 40507
Telephone:  859-253-0523
Facsimile:  859-254-2098
E-mail:skinkel@fulkersonkinkel.com
        mmarrs@fulkersonkinkel.com

By:      _____

STEVEN G. KINKEL
MELANIE S. MARRS
*Counsel for Defendants,*
*Laboratory for Kidney Pathology, Inc.,*
*and Lilia Mauricio, M.D.*

2

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was served upon the following via U.S. mail on this the ___29th___ day of December, 2015:

**Original To:**
Fayette Circuit Court Clerk
103 Robert F. Stephens Courthouse
120 North Limestone Street
Lexington, Kentucky 40507

**Copy To:**
Douglass Farnsley
J. Brittany Cross Carlson
Stites & Harbison, PLLC
400 West Market Street
Suite 1800
Louisville, Kentucky 40202
*Counsel for Plaintiffs*


STEVEN G. KINKEL
MELANIE S. MARRS
*Counsel for Defendants,*
*Laboratory for Kidney Pathology, Inc.,*
*and Lilia Mauricio, M.D.*

3

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
DIVISION III
CIVIL ACTION NO. 15-CI-4557

MARTIN LUFTMAN and
VIRGINIA LUFTMAN                                                      PLAINTIFFS

### V.   PUTATIVE DEFENDANTS, LABORATORY FOR KIDNEY PATHOLOGY, INC., AND LILIA MAURICIO, M.D.'S MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

LABORATORY FOR KIDNEY PATHOLOGY, INC.;
and LILIA MAURICIO, M.D.                                             DEFENDANTS

                    *    *    *    *    *    *    *    *

**MAY IT PLEASE THE COURT:**

Come now the Putative Defendants, Laboratory for Kidney Pathology, Inc., and Lilia Mauricio, M.D., by and through counsel, and without waiving their rights, without subjecting themselves to personal jurisdiction by virtue of this appearance, and without waiving their ability to further challenge this action under CR 8 and CR 12, hereby jointly move this Court to dismiss the claims made against them by the Plaintiffs for lack of personal jurisdiction.  In support of this Motion, the Putative Defendants state as follows:

### INTRODUCTION

The Laboratory for Kidney Pathology, Inc., a corporation registered under the laws of the State of Tennessee and one which also holds its principal place of business there—with no employees, offices, or agents in the Commonwealth of Kentucky—and Dr. Lilia Mauricio, a citizen and domiciliary of the State of Tennessee who does not practice medicine or transact any other type of business within the Commonwealth of Kentucky, are not subject to the personal jurisdiction of this Court.  Quite simply, neither of the Putative Defendants have purposefully

1

availed themselves of the minimum contacts within the Commonwealth of Kentucky which are required in order for this Court to assert jurisdiction over either of them. As such, this Court should dismiss Plaintiffs' claims against the Putative Defendants for lack of personal jurisdiction.

## FACTS

Plaintiffs seek to hold the Putative Defendants liable under a theory of medical negligence based upon Dr. Mauricio's alleged misinterpretation of Plaintiff Martin Luftman's kidney pathology slides, as well as Dr. Mauricio's subsequent alleged misdiagnosis of Mr. Luftman based upon that claimed misinterpretation (*See*: Plaintiffs' Complaint). However, as the affidavits respectively attached hereto as Exhibits A and B make clear, neither of the Putative Defendants has purposefully availed themselves of the minimum contacts within the Commonwealth of Kentucky which are required in order for the Courts of Kentucky to maintain any jurisdiction over them. In fact, neither of the Putative Defendants assert any type of intentional or continuous presence within the Commonwealth of Kentucky, and the only instances of negligence alleged to have been committed by the Putative Defendants to this action occurred in Tennessee rather than Kentucky, if they occurred at all—a point which neither of the Putative Defendants hereby concede.

For instance, Dr. Mauricio's affidavit establishes that she is a citizen and domiciliary of the State of Tennessee, rather than the Commonwealth of Kentucky; that she does not, nor has she ever, practiced medicine in the Commonwealth of Kentucky, and that she is not even licensed to do so; that she holds no residence, office, place of business, or other real property in Kentucky; that she does not advertise or solicit her services within the Commonwealth of Kentucky; and that she in fact transacts no type of business within the Commonwealth of Kentucky (*See*: Affidavit of Putative Defendant, Lilia Mauricio, M.D., attached hereto as Exhibit "A").

Meanwhile, the affidavit of Dr. Robert Horn—who serves as the President of the Laboratory for Kidney Pathology, Inc.—establishes that entity as one which is organized under the laws of Tennessee, rather than Kentucky; which does not transact business in Kentucky, is not registered to do business in Kentucky, and has not appointed an agent for service of process in Kentucky; which does not hold any office or place of business in the Commonwealth of Kentucky; and which does not transact any business in Kentucky, nor advertise itself to do so (*See*: Affidavit of Putative Defendant, Robert G. Horn, M.D., attached hereto as Exhibit "B").

Furthermore—and perhaps most importantly—the entirety of Plaintiffs' allegations of negligence against the Putative Defendants is made up of actions which occurred only in Tennessee, rather than Kentucky. Although Plaintiffs have alleged liability against the Putative Defendants based upon Dr. Mauricio's alleged misreading and/or misinterpretation of Mr. Luftman's pathology slides, as well as Dr. Mauricio's claimed misdiagnosis of Mr. Luftman based upon that reading and/or interpretation, it is undisputed that Dr. Mauricio both read and interpreted Mr. Luftman's pathology slides in Tennessee, rather than Kentucky, and it is also undisputed that the diagnosis report which was generated by Dr. Mauricio following that reading and interpretation was too generated in Tennessee, not Kentucky.

Based upon an application of relevant law to the factual circumstances set out above and sworn to in the attached affidavits, it is clear that this Court cannot exercise personal jurisdiction over the Putative Defendants. As such, the Plaintiffs' Complaint must be dismissed.

## LAW AND ARGUMENT

Under Kentucky law, "the proper analysis of long-arm jurisdiction over a nonresident defendant consists of a two-step process under which review first proceeds under KRS 454.210 and, if jurisdiction is permissible under the long-arm statute, only then is jurisdiction under federal

3

due process examined." *Hinners v. Robey*, 336 S.W.3d 891, 895 (Ky. 2011) (*internal quotations and citations omitted*). KRS 454.210(2)(a) enumerates nine distinct instances in which Kentucky courts may exercise personal jurisdiction over a nonresident. *See*: Ky. Rev. Stat. Ann. § 454.210. If jurisdiction is permitted under any of these criteria, a plaintiff must then show that exercise of personal jurisdiction over the defendant comports with the Due Process Clause of the U.S. Constitution. *Hinners*, 336 S.W.3d at 897. The burden is on the plaintiff to make a *prima facie* showing that the defendant is subject to personal jurisdiction in the state. *Allen v. Jones*, 372 S.W.3d 441, 443 (Ky. Ct. App. 2012).

Under the due process analysis promulgated by the U.S. Supreme Court in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), and its progeny, the Plaintiffs must plead and prove facts establishing that the Putative Defendants had "minimum contacts" with Kentucky "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* at 316. The Court, in fact, has long held that a state may not exercise long-arm jurisdiction over a nonresident unless the defendant "purposely availed" itself of the benefits and protections of the state's laws. *Asahi Metal Indus. Co. Ltd. v. Superior Ct. of Cal.*, 480 U.S. 102, 112 (1987). The "purposeful availment" requirement necessitates that the nonresident's conduct reflect such a deliberate connection with the forum state that it should reasonably anticipate being haled into court there. *Nat'l Grange Mut. Ins. Co. v. White*, 83 S.W.3d 530, 534 (Ky. 2002). Additionally, the "unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum state to justify an assertion of jurisdiction." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980); *See also*: *Hinners*, 336 S.W.3d at 901.

4

Because there is a complete absence of facts sufficient to establish the minimum contacts required for either of the Putative Defendants to become subject to either a Kentucky Court's exercise of general or specific personal jurisdiction over it, Plaintiffs' Complaint against each of the Putative Defendants must be dismissed.

## I. Kentucky Cannot Exercise General Personal Jurisdiction over the Putative Defendants

In order for "general" personal jurisdiction to exist, there must be "a showing that the defendant has continuous and systematic contacts with the forum state sufficient to justify the state's exercise of judicial power with respect to any and all claims the plaintiff may have against the defendant." *Crouch v. Honeywell Int'l, Inc.*, 682 F. Supp. 2d 788, 792 (W.D. Ky. 2010); *Helicopteros*, 466 U.S. at 416.

The Putative Defendants have no contacts with Kentucky that could be described as substantial, continuous, or systematic. First, Dr. Mauricio is a citizen and domiciliary of Tennessee, rather than Kentucky, while the Laboratory for Kidney Pathology, Inc. is a corporation which is both organized under the laws of Tennessee, and which holds is principal place of business in Tennessee—not Kentucky. Second, neither of the Putative Defendants transact any regular business in Kentucky; much less do either hold any office or place of business in there. Further, neither of the Putative Defendants advertises or markets any type of service within the Commonwealth of Kentucky. And finally, neither of the Putative Defendants even hold an ownership interest over any piece of property situated within Kentucky's state lines. In short, each of the Putative Defendants' contacts with Kentucky stem only from their receipt of pathology slides from medical practitioners who work within the Commonwealth of Kentucky, and their subsequent return of those slides to Kentucky practitioners, with their report thereon—one which is completed in Tennessee—included.

The Putative Defendants have not engaged in *any* purposeful business activities in Kentucky, much less any purposeful activities that could be described as "continuous" or "systematic." Hence, there is no basis for Kentucky to exercise general jurisdiction over either of them. Because the Putative Defendants have no real relationship with Kentucky, it is not reasonable to require them to defend the pending litigation in Kentucky. This Court's assertion of jurisdiction in the instant action would offend even the outer limits of due process, as the Putative Defendants simply do not have any continuous or systematic contacts with the Commonwealth of Kentucky. As the above analysis makes clear, the Putative Defendants are not subject to general personal jurisdiction in Kentucky.

## II.   Kentucky Cannot Exercise Specific Personal Jurisdiction over the Putative Defendants

In order for "specific" personal jurisdiction to exist, the lawsuit at issue must arise out of, or be sufficiently related to, a defendant's contacts with the forum state. *Crouch v. Honeywell Int'l, Inc.*, 682 F. Supp. 2d 788, 792 (W.D. Ky. 2010). Courts consider a three prong test to determine specific personal jurisdiction:

> The first prong of the test asks whether the defendant purposefully availed himself of the privilege of acting within the forum state or causing a consequence in the forum state. The second prong considers whether the cause of action arises from the alleged instate activities [or consequence.] The final prong requires such connections to the state as to make jurisdiction reasonable.

*Hinners*, 336 S.W.3d at 898.

### a.   The Putative Defendants Do Not Have Minimum Contacts Sufficient for the Court to Assert "Specific" Jurisdiction

This case does not involve any purposeful contact between either of the Putative Defendants and the Commonwealth of Kentucky. A finding of minimum contacts can only be "satisfied if the defendant has *purposefully* directed his activities at residents of the forum..."

*Burger King*, 471 U.S. at 472 (*emphasis added*).  The purposeful-availment requirement assures that a defendant will not be haled into a jurisdiction as a result of "the unilateral activity of another person or a third person." *Id.* at 476.

In the present matter, the Putative Defendants made no purposeful direction of their activities towards the Commonwealth of Kentucky, and instead made only incidental contact with the forum state, as the only interaction directed into Kentucky came through their *return* of Mr. Luftman's pathology slides, as well as their report thereon, to the Kentucky address from which the slides had been originally sent—not from any purposeful direction *initiated* by the Putative Defendants themselves.  Neither of the Putative Defendants made any effort to actively solicit their services in providing an analysis of those slides, but rather only accepted those slides after being requested to do so.  Essentially, the Putative Defendants' contact with the Commonwealth of Kentucky was completely random, as their services were only selected due to the small number of kidney pathology labs around the country, in conjunction with their relatively close proximity to the residence of the Plaintiffs.  Thus, the Putative Defendants' contact with the Commonwealth of Kentucky was hardly "purposefully availed", as the slides at issue were not specifically requested by the Putative Defendants, and the Putative Defendants did not advertise their pathology-analyzing services within the Commonwealth of Kentucky—much less directly to the Plaintiffs— but instead only came into contact with Kentucky due to the Plaintiffs' own initiation.

As the forgoing analysis explains, the Putative Defendants have done nothing to *intentionally invoke or purposefully avail* themselves of the benefits and protections of Kentucky's laws, and instead have only made one minimal contact with the forum state—a contact which was initiated by Plaintiffs themselves.  As such, the Putative Defendants' minimum contacts with the

Commonwealth of Kentucky are insufficient to justify that state's exercise of jurisdiction over them.

**b.      There is No Sufficient Nexus Between the Plaintiffs' Claims and the Alleged Negligence of the Putative Defendants**

In addition to the requirement that a defendant purposefully direct its conduct at the forum state in order for personal jurisdiction to exist, there also must be a sufficient 'nexus' between the injuries alleged to have occurred, and the forum-directed conduct. *Burger King*, 471 U.S. at 472. While the Putative Defendants continue to assert that the first of these requirements is unsatisfied—as is set out in the immediately preceding argument—thus making analysis of this second prong unnecessary, it will nevertheless be addressed out of an abundance of caution.

While the Putative Defendants acknowledge that a slight nexus exists between the claims being made by Plaintiff and the allegations of negligence which have been asserted, they maintain that the nexus which does exist is wholly insufficient to confer personal jurisdiction. *Kennedy v. Ziesmann*, 526 F. Supp. 1328 (E.D. Ky. 1981), a decision from the U.S. District Court for the Eastern District of Kentucky, is instructive. There, the Court held that personal jurisdiction was lacking in an action in which the Plaintiff, a Kentucky resident, filed suit against a Defendant doctor, an Ohio resident, in Kentucky state court, based upon the allegedly negligent provision of treatment which occurred in Ohio. While Plaintiff argued that personal jurisdiction was proper on the basis of phone calls which the Doctor made to the Plaintiff in Kentucky to discuss the treatment rendered, the Court disagreed. In so ruling, the Court found that the cause of action alleged, if any existed, arose in Ohio when the anesthetic was administered, and that the telephone calls made by the doctor to the patient in Kentucky were only incidental. *Id.* The court further found that the "incidental" telephone calls from outside the forum state into the forum state were insufficient contacts to form the basis for an exercise of personal jurisdiction. *Id.*

8

The instant case presents a scenario analogous to that in *Kennedy*. Just as the phone calls placed to the Plaintiff there were deemed incidental by the Court, so too was the Putative Defendants' return of the Mr. Luftman's pathology slides, and the report thereon, in the current action. Here, the cause of action alleged against the named Defendants, if any exists, arose in Tennessee when the Defendants are alleged to have improperly read the slides provided, resulting in a misdiagnoses. The sending and receiving of those slides to and from individuals within the state of Kentucky are mere incidental contacts which are insufficient to form the nexus which is required in order for personal jurisdiction to exist, and which are therefore also insufficient to constitute a basis for exercising personal jurisdiction.

**c.    Exercise of Jurisdiction Would Not Be Reasonable in This Case.**

It is not reasonable, and thus it is constitutionally offensive, to impose personal jurisdiction on the Putative Defendants in this case. In determining whether jurisdiction is reasonable, the Court considers several factors including the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies. *Dierig v. Lees Leisure Indus.*, 2012 U.S. Dist. LEXIS 26181 (E.D. Ky. Feb. 28, 2012); *Burger King*, 471 U.S. at 477.

As set out in the affidavits attached hereto as Exhibits A and B, the Laboratory for Kidney Pathology, Inc. is a corporation headquartered in Tennessee with no employees or contacts with Kentucky, and Dr. Mauricio is a Tennessee citizen and domiciliary with a similar absence of Kentucky contacts. Neither have purposefully availed themselves to the laws of Kentucky in any way, shape, or form. Litigating this case in a forum in which neither of the Putative Defendants took any action, made any decision, or provided any medical input would obviously create a significant burden. Additionally, there are no overriding policy considerations that compel

9

Kentucky to assert jurisdiction over the Putative Defendants. Neither of them performed any activities in Kentucky, solicited or engaged in transactions in Kentucky, or engaged in any activities within Kentucky that gave rise to the pending litigation. As such, the claims against the Putative Defendants must be dismissed, as the Court cannot exercise personal jurisdiction over them.

## CONCLUSION

WHEREFORE, for the forgoing reasons, and based upon the undisputed facts in the record, the Putative Defendants, Laboratory for Kidney Pathology, Inc., and Lilia Mauricio, M.D., respectfully request that this Court enter an Order dismissing all of Plaintiffs' claims against the Putative Defendants WITH PREJUDICE, with the understanding that Plaintiffs are free to leave and refile their action in a forum in which jurisdiction over the Putative Defendants can be properly exercised.

Respectfully submitted,

**FULKERSON, KINKEL & MARRS, PLLC**
239 North Broadway
Lexington, Kentucky 40507
Telephone: 859-253-0523
Facsimile: 859-254-2098
E-mail: skinkel@fulkersonkinkel.com
mmarrs@fulkersonkinkel.com

By: _____

STEVEN G. KINKEL
MELANIE S. MARRS
*Counsel for Defendants,*
*Laboratory for Kidney Pathology, Inc.,*
*and Lilia Mauricio, M.D.*

10

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was served upon the following via U.S. mail on this the __29th__ day of December, 2015:

**Original To:**
Fayette Circuit Court Clerk
103 Robert F. Stephens Courthouse
120 North Limestone Street
Lexington, Kentucky 40507

**Copy To:**
Douglass Farnsley
J. Brittany Cross Carlson
Stites & Harbison, PLLC
400 West Market Street
Suite 1800
Louisville, Kentucky 40202
*Counsel for Plaintiffs*


_____
STEVEN G. KINKEL
MELANIE S. MARRS
*Counsel for Defendants,*
*Laboratory for Kidney Pathology, Inc.,*
*and Lilia Mauricio, M.D.*

11



COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
DIVISION III
CIVIL ACTION NO. 15-CI-4557

MARTIN LUFTMAN and
VIRGINIA LUFTMAN                                               PLAINTIFFS

V.          **AFFIDAVIT OF DEFENDANT, LILIA MAURICIO, M.D.**

LABORATORY FOR KIDNEY PATHOLOGY, INC.;
and LILIA MAURICIO, M.D.                                       DEFENDANTS

\*   \*   \*   \*   \*   \*   \*   \*

STATE OF TENNESSEE   )
COUNTY OF *Marshall*

Lilia Mauricio, M.D., being duly sworn, deposes and states as follows:

1. I am over eighteen years of age and have personal knowledge of the matters stated in this Affidavit.

2. All facts stated in this affidavit are true and correct.

3. I am presently, and at all times relevant to Plaintiffs' Complaint was, engaged as a physician for the Laboratory for Kidney Pathology, Inc.

4. I am presently, and at all times relevant to Plaintiffs' Complaint was, a citizen and domiciliary of the State of Tennessee.

5. I am not presently, and at all times relevant to Plaintiffs' Complaint was not, a citizen or domiciliary of the Commonwealth of Kentucky.

6. I am not presently, and at all times relevant to Plaintiffs' Complaint was not, licensed to practice medicine in the Commonwealth of Kentucky.

7. I have never provided any medical treatment in the Commonwealth of Kentucky.

1

8. I presently hold no residence, office, or place of business in the Commonwealth of Kentucky, and did not hold any such residence, office, or place of business at any time relevant to Plaintiffs' Complaint.

9. I do not, and at all times relevant to Plaintiffs' Complaint did not, transact any business in the Commonwealth of Kentucky.

10. I do not, and at all times relevant to Plaintiffs' Complaint did not, advertise, market, or offer services for sale in Kentucky.

11. I presently own no real property in the Commonwealth of Kentucky, and did not own any such property at any time relevant to Plaintiffs' Complaint.

FURTHER THE AFFIANT SAYETH NOT.

_____
AFFIANT

Subscribed and sworn to before me this __28__ day of December, 2015.

_____
Notary Public

My Commission Expires: __7/2/2016__



COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
DIVISION III
CIVIL ACTION NO. 15-CI-4557

MARTIN LUFTMAN and
VIRGINIA LUFTMAN                                                              PLAINTIFFS

V.          **AFFIDAVIT OF ROBERT G. HORN, M.D.**

LABORATORY FOR KIDNEY PATHOLOGY, INC.;
and LILIA MAURICIO, M.D.                                                   DEFENDANTS

*     *     *     *     *     *     *     *

STATE OF TENNESSEE        )
                          )
COUNTY OF _MARSHALL__     )

    Robert G. Horn, M.D., being duly sworn, deposes and states as follows:

1. I am over eighteen years of age and have personal knowledge of the matters stated in
   this Affidavit.

2. All facts stated in this affidavit are true and correct.

3. I am presently, and at all times relevant to Plaintiffs' Complaint was, President of the
   Laboratory for Kidney Pathology, Inc., a Tennessee corporation holding its principal
   place of business at 1916 Patterson Street, Nashville, Tennessee 37203.

4. The Laboratory for Kidney Pathology, Inc. does not transact business in Kentucky, is
   not registered to do business in Kentucky, and has not appointed an agent for service
   of process in Kentucky.

5. The Laboratory for Kidney Pathology, Inc. presently holds no office or place of
   business in the Commonwealth of Kentucky, and did not hold any such office or
   place of business at any time relevant to Plaintiffs' Complaint.

1

6. The Laboratory for Kidney Pathology, Inc. does not, and at all times relevant to Plaintiffs' Complaint did not, transact any business in the Commonwealth of Kentucky.

7. The Laboratory for Kidney Pathology, Inc. does not, and at all times relevant to Plaintiffs' Complaint did not, advertise, market, or offer services for sale in Kentucky.

8. The Laboratory for Kidney Pathology, Inc. does not, and at all times relevant to Plaintiffs' Complaint did not, own any real property in the Commonwealth of Kentucky.

FURTHER THE AFFIANT SAYETH NOT.

Robert G. Horn
AFFIANT

Subscribed and sworn to before me this 28th day of December 2015.

Carole J. Lambert
Notary Public

My Commission Expires: 7/2/2016

CAROLE J. LAMBERT
STATE
OF
TENNESSEE
NOTARY
PUBLIC
MARSHALL COUNTY

2

FILED
ATTEST, VINCENT RIGGS, CLERK
JAN 0 8 2016
FAYETTE CIRCUIT CLERK
BY _____ DEPUTY

## COMMONWEALTH OF KENTUCKY
## FAYETTE CIRCUIT COURT
## DIVISION III
## CIVIL ACTION NO. 15-CI-4557

MARTIN LUFTMAN and                                          PLAINTIFFS
VIRGINIA LUFTMAN

### PLAINTIFFS' MOTION FOR EXTENSION OF TIME
### AND TO PERMIT DISCOVERY

v.

LABORATORY FOR KIDNEY                              DEFENDANTS
PATHOLOGY, INC. and
LILIA MAURICIO, M.D.


Plaintiffs, Martin Luftman and Virginia Luftman, by counsel, move the Court

for an extension of time to respond to defendants' motion to dismiss and for

permission to conduct discovery on the factual issues related to personal jurisdiction

raised in defendants' motion.

In their motion to dismiss, defendants assert that the Court lacks personal

jurisdiction over them because the defendants did not purposefully direct their

activities to a Kentucky resident.  Kentucky's long arm statute, KRS 454.210,

provides that a Kentucky court may exercise jurisdiction over an out-of-state

defendant when that defendant has engaged in certain conduct, including, among

other things:

> Causing tortious injury in this Commonwealth by an act
> or omission outside this Commonwealth if he regularly
> does or solicits business, or engages in any other
> persistent course of conduct, or derives substantial
> revenue from goods used or consumed or services
> rendered in this Commonwealth, provided that the
> tortious injury occurring in this Commonwealth arises out

1

> of the doing or soliciting of business or a persistent course
> of conduct or derivation of substantial revenue within the
> Commonwealth...

KRS 454.210(2)(a)4.  Whether a defendant solicits business, engages in any

persistent course of conduct, or derives substantial revenue from services rendered

in Kentucky presents questions of fact.  Defendants acknowledge that the issue

before the Court involves questions of fact, as they each filed affidavits in support of

their motion.

Defendants accepted Martin Luftman's pathology samples from his

Lexington-area physician, negligently misread the slides defendants developed from

the specimen, and provided their report and diagnosis to his physician, knowing

that the report would be the basis for Martin Luftman's further treatment in

Lexington, Kentucky.

Courts have asserted personal jurisdiction over non-resident pathology

defendants in similar circumstances, where the pathology defendants accepted a

sample and subsequently sent a diagnostic report to the plaintiff's physician in the

forum state, knowing that the report would be the basis of further treatment in the

forum state. *See, e.g., Kennedy v. Freeman*, 919 F.2d 126 (10th Cir. 1990); *Kostal v.*

*Pinkus Dermatopathology Lab.*, P.C., 357 Ill. App. 3d 381 (Ill. App. Ct. 2005);

*Sanders v. Ball*, 1999 U.S. Dist. LEXIS 9074 (E.D. La. June 11, 1999); *Gonzales v.*

*Chandel*, 13 F. Supp. 2d 1197 (D.C. Kan. 1998); *Urspruch v. Greenblum*, 968 F.

Supp. 707 (S.D. Ga. 1996); *Pomerantz v. Wolfin*, 236 A.D.2d 379 (1997); *Durette v.*

*International Cancer Screening Laboratories, Inc.*, 1995 Mass. Super. LEXIS 494

(March 9, 1995) (cases collectively attached as Exhibit 1). Courts addressing personal jurisdiction in pathology cases recognize the important difference between a physician with a primarily local practice treating an out-of-state patient and a pathologist who offers a diagnosis through the mail with the expectation that such diagnosis will form the basis of a patient's treatment in the forum state. While a pathologist may not solicit a patient's business from the forum state, he "'purposefully direct[s]' his actions to the forum state by performing medical services through the mail for a patient in the forum state." *Durrette*, 1995 Mass. Super. LEXIS at *9 (citing *Kennedy*, 919 F.2d 129.

Plaintiffs should be permitted to conduct discovery on the limited question of whether and to what extent the defendants further "regularly [do] or solicit[] business, or engage[] in any other persistent course of conduct, or derive[] substantial revenue from goods used or consumed or services rendered in this Commonwealth." KRS 454.210(2)(a)4. Defendants acknowledge that there are only a small number of kidney pathology labs in the country and further acknowledge that their proximity to Kentucky made them a natural choice for a Kentucky physician in need of a kidney pathologist. (Def. Mt. to Dismiss at 7.) Further discovery would likely show that, given their special expertise, defendants have sufficient minimum contacts to assert personal jurisdiction, including routinely receiving samples from Kentucky, deriving substantial revenue from Kentucky, and maintaining regular contact with Kentucky physicians. Discovery is needed to fully

explore these issues and respond to defendants' factual assertions in support of their motion to dismiss.

Accordingly, plaintiffs move the Court to permit plaintiffs sixty days to conduct discovery of facts relevant to the issue of personal jurisdiction and to file their response to defendants motion to dismiss.

## NOTICE

Please take notice that this motion will come for hearing before the Fayette Circuit Court, Division III, on Friday, January 15, 2016, at 1:00 p.m., or as soon thereafter as counsel may be heard.

Douglass Farnsley
J. Brittany Cross Carlson
STITES & HARBISON, PLLC
400 West Market Street, Suite 1800
Louisville, Kentucky  40202
Telephone: (502) 587-3400
dfarnsley@stites.com
bcarlson@stites.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served by United States First Class Mail, postage prepaid, on this 8th day of January, 2016 upon:


Steven G. Kinkel

Melanie S. Marrs

Fulkerson, Kinkel & Marrs, PLLC

239 North Broadway

Lexington, KY 40507

*Counsel for Defendants*

J. Brittany Cross Carlson (by kko)
Counsel for Plaintiffs

1065846:1:LOUISVILLE

5



MARSHA LEE KENNEDY and STEPHEN MICHAEL KENNEDY, Plain-
tiffs-Appellants, v. ROBERT G. FREEMAN, M.D. and ROBERT G. FREEMAN,
P.A., a Texas corporation, Defendants-Appellees

No. 89-5102

UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT

*919 F.2d 126; 1990 U.S. App. LEXIS 19957*

November 14, 1990, Filed

**PRIOR HISTORY:**      [**1]  Appeal from the United
States District Court for the Northern District of Okla-
homa; D.C. No. 88-C-1466-B; D.C. Judge Thomas R.
Brett.

**DISPOSITION:**     Reversed.

**COUNSEL:** Matt A. Melone (Jerry M. Melone on the
briefs) of Melone, Shepherd, Schroeder, Allred &
Melone, Tulsa, Oklahoma, for Plaintiffs-Appellants.

Galen L. Brittingham (Patricia A. Lamb on the brief) of
Thomas, Glass, Atkinson, Haskins, Nellis & Boudreaux,
Tulsa, Oklahoma, for Defendants-Appellees.

**JUDGES:** Seymour, Moore, and Brorby, Circuit Judges.

**OPINION BY:** SEYMOUR

**OPINION**

[*127]  SEYMOUR, Circuit Judge

Marsha Lee Kennedy and Stephen Michael Kennedy
("Kennedy") appeal from the district court order dis-
missing their complaint for lack of personal jurisdiction
over defendants, Robert G. Freeman, M.D. and Robert
G. Freeman, P.A. ("Freeman"). We reverse.

I.

Marsha Kennedy, a resident of Oklahoma, sought
medical advice in 1982 from her physician, Dr. Dosser,
because of a "mole" on her thigh. Dosser removed the
lesion and sent it from his office in Oklahoma to Free-
man in Dallas, Texas, for a special measurement. Free-

man willingly accepted the sample. He measured the
sample and sent a report to Dosser indicating the thick-
ness of the lesion, expecting that it would be used in the
treatment of Kennedy. Freeman also  [**2]  evidently
sent his bill to Oklahoma.

Unfortunately, Freeman's report was inaccurate. He
incorrectly advised Dosser that the specimen was 0.2 mm
thick when in fact it measured 1.2 mm. The thickness of
a lesion determines the treatment to be administered to a
patient. As a result of the error, Kennedy was not given
any treatment or follow-up care. Four years later, she
learned that malignant melanoma had spread over her
entire body.

Kennedy filed a complaint in the Northern District
of Oklahoma alleging Freeman negligently undermeas-
ured and reported the size of the lesion. Freeman filed a
motion to dismiss for lack of personal jurisdiction pur-
suant to *Fed. R. Civ. P. 12(b)(2)*. The district court
granted the motion from which Kennedy appeals. *See
Kennedy v. Freeman, 710 F. Supp. 1317 (N.D. Okla.
1989).*

[*128]  II.

This court reviews district court jurisdictional rul-
ings de novo. *Ten Mile Indus. Park v. Western Plains
Serv. Corp., 810 F.2d 1518, 1524 (10th Cir. 1987).* The
following standard controls our review:

"The plaintiff bears the burden of es-
tablishing personal jurisdiction over the
defendant. Prior to trial, however, when a
motion to dismiss for lack of jurisdiction
is decided [**3]  on the basis of affida-
vits and other written materials, the plain-

PLAINTIFF'S
EXHIBIT

1

ALL-STATE LEGAL

tiff need only make a prima facie showing. The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party."

*Behagen v. Amateur Basketball Ass'n of the United States, 744 F.2d 731, 733 (10th Cir. 1984)* (citations omitted), *cert. denied, 471 U.S. 1010, 105 S. Ct. 1879, 85 L. Ed. 2d 171 (1985).* In a diversity action, forum law determines whether a plaintiff has made a prima facie showing of minimum contacts to establish jurisdiction. *Yarbrough v. Elmer Bunker & Assocs., 669 F.2d 614, 616 (10th Cir. 1982).* A plaintiff must satisfy the requirements of the forum's long-arm statute as well as the federal constitution to establish personal jurisdiction. *Equifax Servs., Inc. v. Hitz, 905 F.2d 1355, 1357 (10th Cir. 1990).* Oklahoma's long-arm statute jurisdiction is coextensive with the constitutional limitations imposed by the Due Process Clause. *Rambo v. American* [**4] *Southern Ins. Co., 839 F.2d 1415, 1416-17 (10th Cir. 1988).* [1] Therefore, if jurisdiction is consistent with the Due Process Clause, Oklahoma's long-arm statute authorizes jurisdiction over a nonresident defendant. We maintain the following general constitutional test for the exercise of personal jurisdiction:

"A federal court sitting in diversity "may exercise personal jurisdiction over a nonresident defendant only so long as there exist "'minimum contacts'" between the defendant and the forum state." "The defendant's contacts with the forum state must be such that maintenance of the suit 'does not offend "traditional notions of fair play and substantial justice."'"

*Rambo, 839 F.2d at 1417* (citations omitted).

1   Oklahoma's long-arm statute, *Okla. Stat. tit. 12, § 2004(F)* (Supp. 1989), provides:

"A court of this state may exercise jurisdiction on any basis consistent with the Constitution of this state and the Constitution of the United States."

In order to establish specific jurisdiction, [2] the defendant [**5] must do some act that represents an effort by the defendant to "purposefully avail[] itself of the privilege of conducting activities within the forum State." *Hanson v. Denckla, 357 U.S. 235, 253, 2 L. Ed. 2d 1283, 78 S. Ct. 1228 (1958); Rambo, 839 F.2d at 1417.* A defendant does so when she purposefully directs her foreign acts so that they have an effect in the forum state. *Lanier v. American Bd. of Endodontics, 843 F.2d 901, 910 (6th Cir.), cert. denied, 488 U.S. 926, 109 S. Ct. 310, 102 L. Ed. 2d 329 (1988).*

2   Jurisdiction may either be general or specific. General jurisdiction arises from a defendant's continuous and systematic activity in the forum state. *See Rambo v. American Southern Ins. Co., 839 F.2d 1415, 1418 (10th Cir. 1988); Behagen v. Amateur Basketball Ass'n of the United States, 744 F.2d 731 (10th Cir. 1984), cert. denied, 471 U.S. 1010, 85 L. Ed. 2d 171, 105 S. Ct. 1879 (1985).* Specific jurisdiction arises in the absence of such activity and is predicated on a defendant's minimum contacts with the forum which give rise to the cause of action. In view of the nature of Freeman's contacts in this case, we believe a specific jurisdiction analysis applies here.

[**6]   The purposeful availment requirement serves two functions. First, it identifies acts that a defendant would reasonably expect to subject her to jurisdiction in the particular forum. Second, it ensures that only the *defendant's* acts directed at the forum establish jurisdiction. *Rambo, 839 F.2d at 1419* (citing *Burger King v. Rudzewicz, 471 U.S. 462, 474-75, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985)).* [*129] Random, fortuitous, or unilateral acts of other parties cannot be the basis for jurisdiction. *Id.*

In the context of doctor-patient litigation, special rules have evolved to ensure that personal jurisdiction is asserted over a doctor only when she has purposefully availed herself of the privileges of conducting activities within her patient's state. While a doctor's practice may be local, she may often treat out-of-state patients who seek her help. Thus, courts have had to fashion jurisdictional rules when doctors who have essentially local practices become involved in another state not as a result of their intention to do so but, rather, as a result of the action of their out-of-states patients. *See, e.g., Wright v. Yackley, 459 F.2d 287, 288-89 (9th Cir. 1972)* (no jurisdiction in Idaho over South Dakota [**7] doctor who treated his patient in South Dakota and merely phoned a

919 F.2d 126, *; 1990 U.S. App. LEXIS 19957, **

prescription refill into Idaho); *McAndrew v. Burnett, 374 F. Supp. 460 (M.D. Penn. 1974)* (no jurisdiction in Pennsylvania over New York surgeon where alleged negligent surgery occurred in New York and decedent subsequently moved to Pennsylvania and died there). Courts have found jurisdiction over nonresident doctors where they purposefully directed their actions at plaintiffs' states. For example, where doctors or hospitals have intentionally solicited business from a state, courts have held jurisdiction over them to be proper in that state. *See, e.g., Cubbage v. Merchent, 744 F.2d 665 (9th Cir. 1984), cert. denied, 470 U.S. 1005, 84 L. Ed. 2d 380, 105 S. Ct. 1359 (1985); Pijanowski v. Cleveland Clinic Found., 635 F. Supp. 1435 (E.D. Mich. 1986); Lemke v. St. Margaret Hosp., 552 F. Supp. 833 (N.D. Ill. 1982).*

The district court here erred in asserting that jurisdiction over a nonresident doctor cannot be established "unless there is some form of solicitation." *Kennedy, 710 F. Supp. at 1320.* Whether a "party solicited the business interface is irrelevant, so long as defendant then directed its activities to the forum resident." *Lanier, 843 F.2d at 910.* In *McGee v. Riekhof, 442 F. Supp. 1276 (D. Mont. 1978),* the court asserted jurisdiction over a nonresident doctor on the basis of his phone call from Utah to Montana in which he rendered a new diagnosis to his patient. *See also Wright, 459 F.2d at 289 n.4* (court stated in dicta that it would be inclined to find jurisdiction where a "doctor could be said to have treated an out-of-state patient by mail").

III.

We hold that Freeman's actions were sufficient to establish jurisdiction. While Freeman did not solicit Kennedy's business in Oklahoma, he did purposefully direct his actions there. He willingly accepted the sample from Oklahoma; he signed a report establishing the thickness of lesion; and he evidently sent his bill there. Freeman rendered his diagnosis to Kennedy in Oklahoma, through the mail, knowing its extreme significance and that it would be the basis of Kennedy's further treatment there.

Asserting jurisdiction over Freeman is compatible with the notions of "fair play and substantial justice" embodied in the Due Process Clause. *Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985).* In this case, the defendant, Freeman, can defeat [**9] otherwise proper jurisdiction only by presenting "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id. at 477.* The district court reasoned that given the state's compelling interest in ensuring access to out-of-state, specialized medical care, jurisdiction should not lie in this case. However, when a doctor purposefully directs her activities at the forum state, that state has a greater interest in deterring medical malpractice against its residents. *Lemke, 552 F. Supp. at 837; McGee, 442 F. Supp. at 1279.* The district court's concerns are placed in their proper perspective when one considers that suits against doctors are always available in their home states. Thus, finding jurisdiction in this type of case will have only an incremental deterrent effect on doctors who provide health care to citizens of foreign states. At any rate, our decision is consistent with the Supreme Court's observation that "the Due Process [*130] Clause allows flexibility in ensuring that commercial actors are not effectively 'judgment proof for the consequences of obligations they voluntarily assume in other States." *Burger King, 471 U.S. at 486.* [**10]

In consideration of the foregoing, we REVERSE.



LexisNexis®

FOCUS - 13 of 19 DOCUMENTS

**DAWN G. KOSTAL, Plaintiff-Appellee, v. PINKUS DERMATOPATHOLOGY LABORATORY, P.C., a Michigan Corporation; DAVID A. MEHREGAN; and DARIUS R. MEHREGAN, Defendants-Appellants.**

No. 1-04-1447

APPELLATE COURT OF ILLINOIS, FIRST DISTRICT, FIFTH DIVISION

*357 Ill. App. 3d 381; 827 N.E.2d 1031; 2005 Ill. App. LEXIS 367; 293 Ill. Dec. 150*

**April 15, 2005, Decided**

**PRIOR HISTORY:**   [***1] Appeal from the Circuit Court of Cook County. Honorable Diane J. Larsen, Judge Presiding.

**COUNSEL:** For APPELLANTS, Lowis & Gellen, Chicago, IL (Mark J. Smith, Joan M. Kubalanza and Jenny Ostrom Blake, of counsel).

For APPELLEE, Cisar & Mrofka, Ltd., Oak Brook, IL (Thomas J. Cisar, Robert J. Mrofka and Kenneth G. Miller, of counsel).

**JUDGES:** Honorable Diane J. Larsen, Judge Presiding. JUSTICE GALLAGHER delivered the opinion of the court. O'BRIEN and NEVILLE, JJ., concur.

**OPINION**

  [*382] [**1033]   JUSTICE GALLAGHER delivered the opinion of the court:

Defendants, Pinkus Dermatopathology Laboratory, P.C. (Pinkus),  [*383] David A. Mehregan, M.D., and Darius R. Mehregan, M.D. (collectively, defendants), appeal from an order of the circuit court of Cook County denying their motion to quash service of summons and to dismiss plaintiff Dawn G. Kostal's fourth amended complaint for lack of personal jurisdiction. We affirm and remand.

**BACKGROUND**

In December 2001, plaintiff, an Illinois resident, visited her physician in Illinois. During that visit, her physician obtained tissue samples and sent them to Pinkus for

analysis. Pinkus,  [***2] a Michigan corporation, is a pathology laboratory that is operated on a national basis. Defendants provide expert diagnostic analysis by mail. Defendants processed and analyzed plaintiff's tissue samples in Michigan, drafted reports in Michigan and sent allegedly inaccurate reports to plaintiff's physician in Illinois.

Plaintiff filed a medical negligence action alleging that, as a result of defendants' negligence, her care and treatment were delayed, requiring extensive medical procedures, and causing her severe and permanent physical injury, pain and suffering, disability, disfigurement and the loss of a normal life. [1] Defendants filed a special appearance to quash service of summons and to dismiss plaintiff's fourth amended complaint for lack of personal jurisdiction. [2] The trial court denied defendants' motion. Defendants now appeal pursuant to *Supreme Court Rule 306(a)(3)* (155 Ill. 2d R. 306(a)(3)).

    1    Plaintiff filed suit against other defendants, all of whom have filed answers to plaintiff's complaint.
    2    Defendants had also opposed plaintiff's previously filed complaints.

  [***3]   ANALYSIS

The sole issue on appeal is whether the State of Illinois can assert jurisdiction over the nonresident defendants. Plaintiff bears the burden of establishing a valid basis for asserting jurisdiction over defendants. *Morecambe Maritime, Inc. v. National Bank of Greece, S.A., 354 Ill. App. 3d 707, 710, 821 N.E.2d 780, 784 (2004)* ("Plaintiff bears the burden of establishing a *prima facie* case for the assertion of personal jurisdiction over de-

357 Ill. App. 3d 381, *; 827 N.E.2d 1031, **;
2005 Ill. App. LEXIS 367, ***; 293 Ill. Dec. 150

fendant; [**1034] however, uncontradicted evidence may overcome the *prima facie* case and defeat jurisdiction").

The standard of review is *de novo* when a trial court determines jurisdiction solely on the basis of documentary evidence. *Morecambe Maritime, Inc. v. National Bank of Greece, S.A., 354 Ill. App. 3d at 710, 821 N.E.2d at 784; Zazove v. Pelikan, Inc., 326 Ill. App. 3d 798, 802, 761 N.E.2d 256, 259, 260 Ill. Dec. 412 (2001)*. In the instant case, the trial court heard no courtroom testimony with respect to the issue of personal jurisdiction. Therefore, our review is *de novo*.

[*384] As in other *de novo* reviews, it is the trial court's judgment that is before us on review, not the trial court's [***4] reasoning. *See, e.g., City of Chicago v. Holland, 206 Ill. 2d 480, 491-92, 795 N.E.2d 240, 247-48, 276 Ill. Dec. 887 (2003)* (summary judgment); *Pryweller v. Cohen, 282 Ill. App. 3d 899, 907, 668 N.E.2d 1144, 1149, 218 Ill. Dec. 312 (1996)* (motion to dismiss); *Makowski v. City of Naperville, 249 Ill. App. 3d 110, 115, 617 N.E.2d 1251, 1255, 187 Ill. Dec. 530) (1993)* (summary judgment). Thus, our function is to determine whether the trial court's decision was correct, regardless of the reasoning or the grounds for that decision. *Holland, 206 Ill. 2d at 492, 795 N.E.2d at 247-48*. If the judgment is correct, we may affirm it on any ground present in the record. *Holland, 206 Ill. 2d at 492, 795 N.E.2d at 247-48; Pryweller v. Cohen, 282 Ill. App. 3d at 907, 668 N.E.2d at 1149*.

Illinois' Long-Arm Statute

The parties agree that whether Illinois can exercise jurisdiction over defendants rests on the applicability of Illinois' long-arm statute. *735 ILCS 5/2-209 (West 2002)*. Illinois' long-arm statute provides several bases for jurisdiction over a nonresident defendant and provides, in relevant part, as follows:

[***5]

"(a) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his or her personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of such acts:

*(1)* The transaction of any business within this State;

*(2)* The commission of a tortious act within this State;

* * *

*(7)* The making or performance of any contract or promise substantially connected with this State;

* * *

(b) A court may exercise jurisdiction in any action arising within or without this State against any person who:

* * *

*(4)* Is a natural person or corporation doing business within this State.

(c) A court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States. *735 ILCS 5/2-209 (West 2002)*.

Before the trial court, plaintiff's counsel conceded that plaintiff's bases for the court's asserting personal jurisdiction over defendants were subsections *(a)(1)* and *(a)(2)*. [***6] The trial court expressly based its decision on these two subsections. In addition, the trial court relied on [*385] *Weiden v. Benveniste, 298 Ill. App. 3d 531, 699 N.E.2d 151, 232 Ill. Dec. 704 (1998)*, which in turn relied on *subsection (c) of Illinois' long-arm statute*. Thus, the trial court also [**1035] impliedly based its decision on *subsection (c)*. Now, on appeal, plaintiff has relied on *subsections (a)(1), (a)(2)*, and *(c)*, and has additionally raised *subsection (b)(4) of Illinois' long-arm statute* as bases for jurisdiction. Defendants contend that Illinois' assertion of jurisdiction over them is improper under any of these subsections of Illinois' long-arm statute.

We shall first briefly address plaintiff's new argument that jurisdiction over defendants is permissible pursuant to section 2-209(b)(4) of the long-arm statute. *735 ILCS 5/2-209(b)(4) (West 2002)*. *Section 2-209(b)(4) of Illinois' long-arm statute* allows Illinois to exercise jurisdiction over a nonresident defendant who is "doing business within" Illinois. Jurisdiction based upon a party's "doing business" in Illinois was recognized by

357 Ill. App. 3d 381, *; 827 N.E.2d 1031, **;
2005 Ill. App. LEXIS 367, ***; 293 Ill. Dec. 150

Illinois courts before it was codified as *section 2-209(b)(4). Hendry v. Ornda Health Corp., 318 Ill. App. 3d 851, 853, 742 N.E.2d 746, 748, 252 Ill. Dec. 208 (2000),* [***7] citing *Gaidar v. Tippecanoe Distribution Service, Inc., 299 Ill. App. 3d 1034, 1041, 702 N.E.2d 316, 320, 234 Ill. Dec. 150 (1998).*

There is a distinction between the "doing business" theory now codified in *subsection (b)(4) of Illinois' long-arm statute* and the "transaction of business" theory under *section (a)(1)* of the statute. Under the "doing business" theory, a corporation becomes subject to the state's jurisdiction if the corporation "engages in a continuous and systematic course of business in the State," even if the subject lawsuit has no relationship to that business. *Kadala v. Cunard Lines, Ltd., 226 Ill. App. 3d 302, 314, 589 N.E.2d 802, 810, 168 Ill. Dec. 402 (1992).* The "doing business" standard is quite high but once satisfied, a corporation is considered a resident of Illinois and may be sued on *any* cause of action, *regardless* of whether it arose out of the corporation's contacts with the state. *Haubner v. Abercrombie & Kent International, Inc., 351 Ill. App. 3d 112, 119, 812 N.E.2d 704, 711, 285 Ill. Dec. 884 (2004).* This is known as general jurisdiction. *Forrester v. Seven Seventeen HB St. Louis Redevelopment Corp., 336 Ill. App. 3d 572, 784 N.E.2d 834, 271 Ill. Dec. 280 (2002).* [***8] Alternatively, under the "transaction of business" theory, the state has jurisdiction "if the corporation transacts any business within the State *and* a cause of action arises from that transaction." (Emphasis added.) *Kadala v. Cunard Lines, Ltd., 226 Ill. App. 3d at 314, 589 N.E.2d at 810.* Such jurisdiction is specific. See, *e.g., Bombliss v. Cornelsen, 355 Ill. App. 3d 1107, 824 N.E.2d 1175, 2005 Ill. App. LEXIS 165, 291 Ill. Dec. 925, No. 3-04-0056 (February 25, 2005)* ("Specific jurisdiction refers to jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum").

As noted, plaintiff's counsel conceded below that plaintiff was [*386] not contending that Illinois could assert general jurisdiction over defendants and that this case involved specific jurisdiction. Thus, the trial court decided that Illinois could exercise specific jurisdiction over defendants. Because we agree with the trial court that there are minimum contacts in this case sufficient to support jurisdiction, we see no need to further discuss plaintiff's newly raised argument that defendants' affidavits and admissions demonstrate that they are "doing business" in Illinois. Likewise, we need not address defendants' contentions that the [***9] facts set forth in their affidavits overcome plaintiff's *prima facie* basis for asserting jurisdiction. The statements in defendants' affidavits relate to their lack of physical presence and are relevant only to the issue of whether defendants are "doing business" in Illinois, which would subject them to

general jurisdiction. In any event, the instant cause of action is for medical negligence which allegedly arose [**1036] from, and is specifically related to, defendants' contacts with Illinois. Thus, a specific jurisdiction analysis applies.

Defendants, citing the 1996 case of *International Business Machines Corp. v. Martin Property & Casualty Insurance Agency, Inc., 281 Ill. App. 3d 854, 666 N.E.2d 866, 217 Ill. Dec. 197 (1996),* contend that a court must employ a two-step analysis to determine whether jurisdiction is proper under Illinois' long-arm statute. [3] But the two-step analysis described in that case is no longer necessary. That is because the Illinois long-arm statute was amended, effective September 7, 1989, to include a so-called "catch-all provision." *Mors v. Williams, 791 F. Supp. 739, 741 (N.D. Ill. 1992); see also Adams v. Harrah's Maryland Heights Corp., 338 Ill. App. 3d 745, 789 N.E.2d 436, 273 Ill. Dec. 536 (2003).* [***10] This catch-all provision, which is subsection (c), states that a court "may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois constitution and the Constitution of the United States." *735 ILCS 5/2-209(c)*(West 2002).

> 3   The *International Business Machines Corp.* court and other cases cited by defendants, including *Alpert v. Bertsch, 235 Ill. App. 3d 452, 601 N.E.2d 1031, 176 Ill. Dec. 333 (1992),* allude to this two-step analysis in reliance on the 1986 Illinois Supreme Court case, *R. W. Sawant & Co. v. Allied Programs Corp., 111 Ill. 2d 304, 489 N.E.2d 1360, 95 Ill. Dec. 496 (1986).*

Illinois courts now treat subsection (c) as an independent basis for exercising personal jurisdiction over a defendant. See, *e.g., Adams, 338 Ill. App. 3d at 747-48, 789 N.E.2d at 439; Alderson v. Southern Co., 321 Ill. App. 3d 832, 856, 747 N.E.2d 926, 946, 254 Ill. Dec. 514 (2001); see also Weiden, 298 Ill. App. 3d at 533, 699 N.E.2d at 153* (stating [***11] that Illinois' long-arm statute is now coextensive with the due process requirements of the state and federal constitutions); see also E. [*387] Anderson, *The Long Reach of Illinois' Long-Arm Statute: The Catch-All Provision. 84 Ill. B.J. 504 (1996).* Thus, if the contacts between a defendant and Illinois are sufficient to satisfy both federal and state due process concerns, the requirements of Illinois' long-arm statute have been met, and no other inquiry is necessary. *Zazove v. Pelikan, Inc., 326 Ill. App. 3d 798, 803, 761 N.E.2d 256, 260, 260 Ill. Dec. 412 (2001); W.R. Grace & Co. v. CSR Limited, 279 Ill. App. 3d 1043, 1047, 666 N.E.2d 8, 10, 216 Ill. Dec. 840 (1996).* In other words, the first step, which involves a determination of whether a defendant did any of the acts enumerated in the statute, is "wholly unnecessary." *Dehmlow v. Austin*

357 Ill. App. 3d 381, *; 827 N.E.2d 1031, **;
2005 Ill. App. LEXIS 367, ***; 293 Ill. Dec. 150

*Fireworks, 963 F.2d 941, 945 (7th Cir. 1992)* (noting that "the first inquiry is wholly unnecessary in the case of many modern state statutes [including Illinois' long-arm statute] which include catch-all provisions that grant to state courts jurisdiction over all matters in which the state may constitutionally assert jurisdiction"); [***12] see also *Adams, 338 Ill. App. 3d at 747, 789 N.E.2d at 439* ("Although, at one time, *subsection (a) of the long-arm statute* listed the only acts that could form the basis for personal jurisdiction, *subsection (c)* was added in a 1989 amendment and is a catchall provision"); *Mors v. Williams, 791 F. Supp. 739, 741 (N.D.Ill. 1992)* ("Stated differently, if due process is satisfied, jurisdiction is met under *Section 2-209(c) of Illinois' long-arm statute* irrespective of whether a defendant has done any of the acts set forth under *Section 2-209(a)(1)-(14)*").

Although the former two-step inquiry is no longer necessary under Illinois' long-arm statute, it has been noted that a [**1037] new two-step inquiry may be required pursuant to the Illinois Supreme Court case of *Rollins v. Ellwood, 141 Ill. 2d 244, 565 N.E.2d 1302, 152 Ill. Dec. 384 (1990)*, which determined "that jurisdiction in Illinois must be analyzed under the due process guarantees of *both* the United States *and* Illinois Constitutions." (Emphasis added.) *Damian Services Corp. v. PLC Services, Inc., 763 F. Supp. 369, 371 (N.D. Ill 1991)*. The *Rollins* court "unequivocally stated that [***13] the Illinois Constitution, which contains its own separate and independent guarantee of due process, must also be satisfied." *Mors v. Williams, 791 F. Supp. 739, 741 (1992)*, citing *Rollins, 141 Ill. 2d at 275, 565 N.E.2d at 1316*. As this court has determined, "although the legislative intent [in passing the 1989 amendments to Illinois' long-arm statute] may have been to expand Illinois courts' jurisdiction over nonresidents to the extent permitted by the *Federal due process clause*," under *Rollins*, this court is bound to independently determine whether the exercise of jurisdiction over nonresident defendants also comports with state due process concerns. *People ex rel. Hartigan v. Kennedy, 215 Ill. App. 3d 880, 576 N.E.2d 107, 159 Ill. Dec. 438 (1991)*; accord *G.M. Signs, Inc. v. Kirn Signs, Inc., 231 Ill. App. 3d 339, 342, 596 N.E.2d 212, 214, 172 Ill. Dec. 933 (1992)*.

[*388] We note that several recent federal court decisions have commented upon the pronounced concerns of the *Rollins* court. While acknowledging the *Rollins* court's concern that the due process standard of the Illinois Constitution and that of the United States Constitution hypothetically might diverge [***14] in some cases, these courts have suggested that no operative difference exists between the federal limitations on personal jurisdiction and the limits imposed by the Illinois Constitution. See *Hyatt International Corp. v. Coco, 302 F.3d 707, 715 (7th Cir. 2002)*; *RAR, Inc. v. Turner Die-*

*sel, Ltd., 107 F.3d 1272, 1276 (7th Cir. 1997)*; *Klump v. Duffus, 71 F.3d 1368, 1372 n.4 (7th Cir. 1995)*. Most recently, a federal court stated as follows: "Because Illinois courts have not elucidated any 'operative difference' between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction,' the two constitutional analyses collapse into one." *Allied Van Lines, Inc. v. Gulf Shores Moving & Storage, Inc., 2005 U.S. Dist. LEXIS 6244, No. 04 C 6900 (N.D.Ill. February 23, 2005)*, quoting *Hyatt, 302 F.3d at 715*. We have not found any post-*Rollins* Illinois case dealing with *in personam* jurisdiction where the requirements of federal due process were deemed to be met, but Illinois' due process requirements were not. Nevertheless, our supreme court has reaffirmed the concern of the *Rollins* court, again noting the [***15] possibility that, under certain circumstances, a difference could exist between federal and state process guarantees and our own state due process guarantee. See *People v. Lindsey, 199 Ill. 2d 460, 468, 771 N.E.2d 399, 406, 264 Ill. Dec. 695 (2002)* ("Under certain circumstances, we may construe our state provisions more broadly than their federal counterparts"); see also *Van Harken v. City of Chicago, 305 Ill. App. 3d 972, 982, 713 N.E.2d 754, 762, 239 Ill. Dec. 223 (1999)* (noting that because our state constitution provides broader rights of due process than the federal constitution, our supreme court has been reluctant to apply the lockstep doctrine in cases involving due process). Pursuant to *Rollins*, we must consider whether the court's exercise of personal jurisdiction satisfies *both* the federal and state due process guarantees.

Federal Due Process Standards for Personal Jurisdiction

Under federal due process standards, a court may exercise personal jurisdiction over a nonresident defendant if the [**1038] defendant has had sufficient "minimum contacts" with the forum state such that maintenance of the suit in the forum does not to offend "'traditional notions of fair play and substantial [***16] justice.' [Citation.]" *International Shoe Co. v. Washington, 326 U.S. 310, 316, 90 L. Ed. 95, 102, 66 S. Ct. 154, 158 (1945)*; *Zazove, 326 Ill. App 3d at 803, 761 N.E.2d at 260*. A nonresident defendant can only be subjected to the authority of the [*389] forum state if the defendant's conduct and connections with the forum are such that it is reasonably foreseeable that it would be haled into court there. *World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 62 L. Ed. 2d 490, 100 S. Ct. 559 (1980)*. "By requiring that individuals have fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign,' [citation], the *Due Process Clause* 'gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to

357 Ill. App. 3d 381, *; 827 N.E.2d 1031, **;
2005 Ill. App. LEXIS 367, ***; 293 Ill. Dec. 150

where that conduct will and will not render them liable to suit.' [Citation.]" *Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 85 L. Ed. 2d 528, 540, 105 S. Ct. 2174, 2182 (1985)*. Where, as here, a state seeks to assert specific jurisdiction over a nonresident defendant who has not consented to [***17] suit there, the "fair warning" requirement is satisfied if the defendant has "purposefully directed" his activities at residents of the state *and* the suit involves alleged injuries that "arise out of or relate to" those activities. *Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 85 L. Ed. 2d 528, 540-41, 105 S. Ct. 2174, 2182 (1985)*.

In determining whether a defendant has had "fair warning" or should "reasonably anticipate" being haled into an out-of-state court, federal courts have relied upon the following reasoning:

" ' The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' " See, *e.g., Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-75, 85 L. Ed. 2d 528, 542, 105 S. Ct. 2174, 2183 (1985)*, quoting *Hanson v. Denckla, 357 U.S. 235, 253, 2 L. Ed. 2d 1283, 1298, 78 S. Ct. 1228, 1239-40 (1958)*. [***18] As the *Burger King* court explained:

"We have noted several reasons why a forum legitimately may exercise personal jurisdiction over a nonresident who 'purposefully directs' his activities toward forum residents. A State generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors. [Citations.] Moreover, where individuals 'purposefully derive benefit' from their interstate activities [citation], it may well be unfair to allow them to escape having to account in other States for consequences that arise proximately from such activities; the *Due Process Clause* may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed. [*390]

And because 'modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity,' it usually will not be unfair to subject him to the burdens of litigating in another forum for disputes relating to such activity. [Citation.]" [**1039] *Burger King, 471 U.S. at 473-74, 85 L. Ed. 2d at 541, 105 S. Ct. at 2182-83*.

We keep [***19] these principles in mind in deciding whether the exercise of personal jurisdiction over defendants comports with federal due process.

· Illinois Due Process Standards for Personal Jurisdiction

Under the Illinois Constitution's due process guarantee, a court may exercise jurisdiction "only when it is fair, just and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois." *Rollins v. Ellwood, 141 Ill. 2d 244, 275, 565 N.E.2d 1302, 1316, 152 Ill. Dec. 384 (1990)*; see also *Weiden, 298 Ill. App 3d at 534, 699 N.E.2d at 153*. Thus, our analysis must further consider whether Illinois' due process concerns are satisfied.

Out-of-State Doctor Cases

In determining whether to assert personal jurisdiction over an out-of-state doctor, special jurisdictional rules have evolved to ensure that jurisdiction is asserted only when that physician has purposefully availed himself of the privileges of conducting activities in the patient's state. *Kennedy v. Freeman, 919 F.2d 126, 129 (10th Cir.1990)*. Courts have developed [***20] these special rules "when doctors who have essentially local practices become involved in another state not as a result of their intention to do so but, rather, as a result of the action of their out-of-states [sic] patients." *Kennedy v. Freeman, 919 F.2d at 129*.

The underlying rationale for these special jurisdictional rules is the rejection of the so-called "portable tort" theory as applied to physicians with local practices outside the forum state. This theory had its genesis in *Gray v. American Radiator & Standard Sanitary Corp., 22 Ill. 2d 432, 176 N.E.2d 761 (1961)*, in which the Illinois Supreme Court construed the "tortious act" provision of the long-arm statute. In *Gray*, the plaintiff was injured when a water heater exploded, as a result of an allegedly defective valve produced by the nonresident manufacturer defendant. The *Gray* court concluded that jurisdiction

was proper over the defendant because the "last event" was the exploding of the water heater, without which there would have been no injury to plaintiff and no tortious event. Thus, although the defendant was never present in Illinois, the *Gray* court held that [*391] the [***21] tortious act occurred in Illinois because the place of a wrong was where the "last event" took place that was necessary to make the defendant liable. *Gray, 22 Ill. 2d 432, 435, 176 N.E.2d 761*.

As defendants now correctly note, "for due process purposes, doctors should not be treated like manufacturers of products." *Lemke v. St. Margaret Hospital, 552 F. Supp. 833, 837 (N.D. Ill 1982)*. The Illinois Supreme Court declined to apply the *Gray* rationale to a professional malpractice claim involving an attorney. [*392] *Yates v. Muir, 112 Ill. 2d 205, 492 N.E.2d 1267, 97 Ill. Dec. 394 (1986)*. The *Yates* court then stated as follows:

"Having held that no tortious act occurred in Illinois, we need not consider whether the defendant's rights under the standards of the *due process clause* have been violated." *Yates, 112 Ill. 2d at 210, 492 N.E.2d 1267, 1269*.

This court has noted, however, that *Yates* was decided before the 1989 amendment to the long-arm statute that extended jurisdiction to the full extent allowed by state and federal due process. See *Zazove, 326 Ill. App. 3d at 807, 761 [**1040] N.E.2d at 1040*. Nonetheless, [***22] in *dicta*, the *Yates* court also stated as follows: "We would, however, observe that the conclusion we reach in favor of the defendant is consistent with decisions under the *due process clause* that residents of one State who travel to another jurisdiction for medical treatment cannot prosecute a malpractice action in their State of residence for injuries arising out of that treatment. [Citations.]" *Yates, 112 Ill. 2d at 210, 492 N.E.2d at 1269*.

In this appeal, defendants now rely on some of these same decisions cited by *Yates*, specifically, *Veeninga v. Alt, 111 Ill. App. 3d 775, 444 N.E.2d 780, 67 Ill. Dec. 544 (1982)*, *Ballard v. Rawlins, 101 Ill. App. 3d 601, 428 N.E.2d 532, 56 Ill. Dec. 940 (1981)*, and *Muffo v. Forsyth, 37 Ill. App. 3d 6, 345 N.E.2d 149 (1976)*, as well as the federal case of *Lemke v. St. Margaret Hospital, 552 F. Supp. 833 (N.D. Ill 1982)*. Defendants contend that these cases are on point and compel dismissal of this case. We disagree.

We first note that, in some of these cases, it is not always clear whether the decisions were based upon the "tortious act" analysis, a due process analysis or [***23] both. See, e.g., *Lemke, 552 F. Supp. at 837* (noting that *Ballard* and *Muffo* do not specify whether jurisdiction was lacking as a matter of local statutory interpretation of the tortious act provision of the long-arm statute or on due process grounds). We also note that plaintiff here has also not directly addressed defendants' argument that the cases of *Ballard* and *Muffo* are dispositive, nor has plaintiff distinguished these cases, other than arguing that the trial court's reliance on *Weiden* was correct. Our review of these cases reveals that the underlying rationale is the same as that in *Yates v. Muir, 112 Ill. 2d 205, 492 N.E.2d 1267, 97 Ill. Dec. 394 (1986)*, and *Wright v. Yackley, 459 F.2d 287, 289-90 (9th Cir. 1972)*. Thus, we shall discuss the reasoning of these cases and explain why that reasoning does not apply to the instant case.

The seminal case for the proposition that the tortious rendition of medical services outside the forum state is not a portable tort that would subject an out-of-state doctor to jurisdiction in the forum is *Wright v. Yackley, 459 F.2d 287 (9th Cir. 1972)*, which was a medical malpractice [***24] action by an Idaho resident against a South Dakota physician. The plaintiff had seen the physician in South Dakota and received a prescription with unlimited refills. *The plaintiff then moved to Idaho.* Four months after being last treated by the defendant, at the plaintiff's request and without charge, the defendant furnished copies of the original prescription to allow the plaintiff to have the prescription filled in Idaho. The plaintiff filed suit in Idaho alleging that she was injured by use of the drugs. The district court dismissed the case for lack of personal jurisdiction over the defendant. The court of appeals affirmed, concluding that no tort was committed within the state of Idaho that would confer jurisdiction under Idaho's long-arm statute.

As the *Wright v. Yackley* court explained:

"In the case of personal services focus must be on the place where the services are rendered, since this is the place of the receiver's (here the patient's) need. The need is personal and the services rendered are in response to the dimensions of that personal need. They are directed to no place but to the needy person herself. It is in the very nature of such services that [***25] their consequences will be felt wherever the person may choose to go. However, the idea that tortious rendition of such services is a [**1041] portable tort which can be deemed to have been

357 Ill. App. 3d 381, *; 827 N.E.2d 1031, **;
2005 Ill. App. LEXIS 367, ***; 293 Ill. Dec. 150

committed wherever the consequences foreseeably were felt is wholly inconsistent with the public interest in having services of this sort generally available. Medical services in particular should not be proscribed by the doctor's concerns as to where the patient may carry the consequences of his treatment and in what distant lands he may be called upon to defend it. The traveling public would be ill served were the treatment of local doctors confined to so much aspirin as would get the patient into the next state. The scope of medical treatment should be defined by the patient's needs, as diagnosed by the doctor, rather than by geography." *Wright v. Yackley, 459 F.2d 287, 289-90 (9th Cir. 1972).*

See also *Mosier v. Kinley, 142 N.H. 415, 702 A.2d 803, 807 (N.H. 1997).*

As one court further explained:

" 'When one seeks out services which are personal in nature, such as those rendered by attorneys, physicians, dentists, hospitals or accountants, *and travels to the locality* [***26] *where he knows the* [*393] *services will actually be rendered,* he must realize that the services are not directed to impact on any particular place, but are directed to the needy person himself. While it is true that the nature of such services is that if they are negligently done, their consequences will thereafter be felt wherever the client or patient may go, it would be fundamentally unfair to permit a suit in whatever distant jurisdiction *the patient may carry* the consequences of his treatment, or the client the consequences of the advice received.' " (Emphasis added.) *Hogan v. Johnson, 39 Wash. App. 96, 101, 692 P.2d 198, 201 (1984),* quoting *Gelineau v. New York University Hospital, 375 F. Supp. 661, 667 (D.N.J. 1974).*

We note that the *Gelineau* court went on to state as follows:

"Unlike a case involving voluntary interstate or international economic activity, *** which is directed at the forum state's markets, the residence of a recipient of

personal services rendered elsewhere is irrelevant and totally incidental to the benefits provided by the defendant at his own location. It is clear that when a client or *a patient travels* [***27] *to receive professional services without having been solicited* (which is prohibited by most professional codes of ethics), then the client, who originally traveled to seek services apparently not available at home, ought to expect that he will have to travel again if he thereafter complains that the services sought by him in the foreign jurisdiction were therein rendered improperly.

Any other rule would seem to be not only fundamentally unfair, but would inflict upon the professions the obligation of traveling to defend suits brought in foreign jurisdictions, sometimes very distant jurisdictions, there brought solely because *the patient or client upon his return to his own home decided to sue at home for services sought by himself abroad.*" (Emphasis added.) *Gelineau, 375 F. Supp. at 667* (cited with approval in *Yates v. Muir, 112 Ill. 2d 205, 492 N.E.2d 1267, 97 Ill. Dec. 394 (1986)).*

The instant case is distinguishable from the line of cases following *Wright v. Yackley,* including those cited by defendants. The main difference is that plaintiff here did not travel out of state, visit a doctor with a local practice, receive treatment and carry the consequences [***28] of treatment back to the forum. Here, instead, defendants purposefully directed their activities here. The distinction between defendants' activities and that of the local doctors in the cases cited by defendant is substantial. [**1042]   "From the very nature of the average doctor's localized practice, there is no systematic or continuing effort on the part of the doctor to provide services which are to be felt in the forum state." *Wright v. Yackley, 459 F.2d at 290.* The average local doctor, who treats a patient who has traveled to that doctor's state, is not thereby engaging [*394] in "voluntary, interstate economic activity." These defendants, however, by the very nature of their business and practice, operate nationally. This is true for both the physicians and the diagnostic laboratory. Thus, the distinction between product manufacturers and doctors with local practices is not entirely applicable to the present case. [4]

357 Ill. App. 3d 381, *; 827 N.E.2d 1031, **;
2005 Ill. App. LEXIS 367, ***; 293 Ill. Dec. 150

4    Plaintiff has also contended that *Gray v. American Radiator & Standard Sanitary Corp., 22 Ill. 2d 432, 176 N.E.2d 761 (1961)*, applies to the instant case without discussing the rejection of the portable tort theory as applied to malpractice cases. Plaintiff has also cited, for this proposition, an appellate court decision that was reversed by our supreme court in *Yates v. Muir, 112 Ill. 2d 205, 492 N.E.2d 1267, 97 Ill. Dec. 394 (1986)*, as mentioned above.

[***29]   We therefore conclude that defendants' contention that the cases of *Veeninga v. Alt, 111 Ill. App. 3d 775, 444 N.E.2d 780, 67 Ill. Dec. 544 (1982), Ballard v. Rawlins, 101 Ill. App. 3d 601, 428 N.E.2d 532 (1981), Muffo v. Forsyth, 37 Ill. App. 3d 6, 345 N.E.2d 149 (1976)*, and *Lemke v. St. Margaret Hospital, 552 F. Supp. 833 (N.D. Ill 1982)*, are more analogous to the case at bar is incorrect. Those pre-1989 cases were decided before our legislature amended Illinois' long-arm statute and added the catch-all provision. More importantly, all four cases involved unilateral activity on the part of the plaintiffs seeking treatment who traveled to the nonresident doctor's home state for services and then returned home to the forum state. This is the typical scenario in the line of cases following *Wright v. Yackley* that reject the portable tort theory. By contrast, in the instant case, plaintiff *never* traveled to Michigan and received no treatment in Michigan. Plaintiff at all times relevant was in Illinois. Defendants erroneously conclude that whether plaintiff physically traveled to Michigan is irrelevant since her tissue traveled [***30]  there at the unilateral request of her physician and on her behalf. This scenario does not equate with the type of unilateral activity of the patients in the *Wright v. Yackley* line of cases. We reject defendants' attempt to characterize their diagnosis and provision of services and treatment via mail to an Illinois resident as identical to mere advertising followed by "unilateral activity" on the part of the plaintiff seeking medical treatment. We also reject defendants' characterization of plaintiff engaging in such unilateral activity through her "agent" Illinois physician.

As the *Wright v. Yackley* court explained:

"The mailing of the prescriptions to Idaho did not constitute new prescription. *It was not diagnosis and treatment by mail.* It was simply confirmation of the old diagnosis and prescription and was recognized by the druggist as such." (Emphasis added.) *Wright v. Yackley, 459 F.2d at 288-89.*

[*395] But as the court additionally explained:

"The balance of factors involved in a due process determination might be different if a doctor could be said to have treated an out-of-state patient by mail or to have provided a new prescription [***31]  or diagnosis in such fashion. In that event, the forum state's interest in deterring such interstate medical service would surely be great. Here, however, the mailing of the copies was simply reflective of, and indeed a part of, the earlier [**1043]    treatment and prescription." *Wright v. Yackley, 459 F.2d at 289 n.4.*

Thus, it was long ago recognized that even "the bellwether case of *Wright v. Yackley* [citation] established a distinction between a situation where one ventures into a foreign state, receives medical treatment, returns to his home state and suffers injurious consequences, and a case where the nonresident physician diagnoses and treats a patient by mail." *Hume v. Durwood Medical Clinic, Inc., 282 S.C. 236, 241, 318 S.E.2d 119, 122 (S.C. App. 1984).*

Plaintiff cites the case of *Kennedy v. Freeman, 919 F.2d 126 (10th Cir. 1990)*. Defendants are correct in noting that *Kennedy* is a case from a foreign jurisdiction that is not binding upon this court (see, *e.g., Mount Vernon Fire Insurance Co. v. Heaven's Little Hands Day Care, 343 Ill. App. 3d 309, 320, 795 N.E.2d 1034, 1044, 277 Ill. Dec. 366 (2003)*. Although they are  [***32]  not binding, comparable court decisions of other jurisdictions "are persuasive authority and entitled to respect." *In re Marriage of Raski, 64 Ill. App. 3d 629, 633, 381 N.E.2d 744, 748, 21 Ill. Dec. 417 (1978)*. When there is Illinois case law directly on point, we need not look to case law from other states for guidance. *Graham v. Commonwealth Edison Co., 318 Ill. App. 3d 736, 744, 742 N.E.2d 858, 865, 252 Ill. Dec. 320 (2000)*; however, no Illinois case is directly on point.

We agree with that the facts of the instant case are more analogous to those in *Kennedy*. Defendants offer no argument regarding the analysis in that case, but merely note that no Illinois appellate court case has relied on *Kennedy* in the 14 years since it was decided. This court finds *Kennedy* to be entirely well-reasoned, persuasive and valuable to our analysis.

*Kennedy* involved an Oklahoma resident who sought treatment from her doctor in Oklahoma. The Oklahoma physician removed a skin lesion and sent it to the defendant, Dr. Freeman in Texas. Dr. Freeman willingly accepted the sample and sent a report back to the plaintiff's physician in Oklahoma. Dr. Freeman knew of the significance of his diagnosis  [***33]  and that it would

357 Ill. App. 3d 381, *; 827 N.E.2d 1031, **;
2005 Ill. App. LEXIS 367, ***; 293 Ill. Dec. 150

be used in treating the plaintiff. The report was inaccurate and, due to Dr. Freeman's error, the plaintiff was given no treatment or follow-up care. The plaintiff learned, four years later, that malignant melanoma had spread over her entire body.

[*396] The plaintiff sued in federal court for negligence. The district court granted the defendant's motion to dismiss for lack of personal jurisdiction, but the Tenth Circuit Court of Appeals reversed. *Kennedy v. Freeman, 919 F.2d 126 (10th Cir. 1990).*

The *Kennedy* court applied Oklahoma's long-arm statute, which, similar to Illinois' long-arm statute, is coextensive with the due process requirements of the state and federal constitutions. [5] The *Kennedy* court discussed the general principles of specific jurisdiction, including the purposeful availment requirement. *Kennedy, 919 F.2d at 128-29.* The court stated that "whether a party solicited the business interface is irrelevant, so long as defendant then directed its activities to the forum resident.' " *Kennedy, 919 F.2d at 129,* quoting *Lanier v. American Board of Endodontics, 843 F.2d 901, 910 (6th Cir. 1988),* [***34] *cert. denied, 488 U.S. 926, 102 L. Ed. 2d 329, 109 S. Ct. 310 (1988).*

5    The relevant statute provided as follows: "A court of this state may exercise jurisdiction on any basis consistent with the Constitution of this state and the Constitution of the United States." *Okla. Stat. Tit. 12, §2004(F)* (Supp. 1989); *Kennedy, 919 F.2d at 128 n.1.*

The *Kennedy* court held that Dr. Freeman's actions were sufficient to establish [**1044] personal jurisdiction. In so doing, the court stated as follows:

"While Freeman did not solicit Kennedy's business in Oklahoma, he did purposefully direct his actions there. He willingly accepted the sample from Oklahoma; he signed a report establishing the thickness of [the] lesion; and he evidently sent his bill there. Freeman rendered his diagnosis to Kennedy in Oklahoma, through the mail, knowing its extreme significance and that it would be the basis of Kennedy's further treatment there." *Kennedy, 919 F.2d at 129.* [***35]

The same analysis applies here. Defendants purposefully directed their activities at Illinois. It is undisputed that defendants willingly received plaintiff's tissue specimens from Illinois in containers supplied by them free of charge, generated three diagnostic reports that were faxed or mailed to Illinois knowing they would be relied upon by plaintiff's physician and rendered a diagnosis knowing that it would form the basis of plaintiff's further treatment in Illinois. As plaintiff further notes, however, her case here is even stronger and bolstered by defendants' admission of a prior, ongoing relationship with plaintiff's doctor, sending him blank requisition slips and other biopsy supplies to his Illinois office, combined with the fact that defendants held themselves out via the Internet as "nationwide" service providers.

In *Kennedy,* the plaintiff was being treated in another state, the [*397] forum state, at the time that the defendant essentially injected himself into the patient's treatment and provided the service, and that service directly affected the decisions regarding the patient's ongoing treatment in the forum state. Likewise, defendants here injected themselves [***36] into plaintiff's treatment in Illinois and, similar to the defendant in *Kennedy,* in effect rendered a diagnosis by mail and actually provided medical treatment in the forum state.

We agree with the court that described *Kennedy* as a case in which "the doctor's services [were] fundamentally interstate in nature from the inception of the relationship." (Emphasis omitted.) *Prince v. Urban, 49 Cal. App. 4th 1056, 1061, 57 Cal. Rptr. 2d 181, 184 (1996).* The *Prince* court noted that "the diagnosis--which was, after all, the critical service provided by the Texas doctor--was made 'through the mail' [Citation.]" (Emphasis omitted.) *Prince v. Urban, 49 Cal. App. 4th at 1061, 57 Cal. Rptr. 2d at 184.* The *Prince* court distinguished this activity from other forms of communication that would not constitute the prerequisite minimum contacts, such as "follow up consultation ancillary to the examination and treatment made by the out-of-state doctor, telephone calls about the status of an out-of-state patient, or arrangements for a patient to continue with medication prescribed by that doctor." *Prince, 49 Cal. App. 4th at 1061, 57 Cal. Rptr. 2d at 184.* [***37] The *Prince* court cited *Ballard v. Rawlins, 101 Ill. App. 3d 601, 428 N.E.2d 532 (1981),* and *Muffo v. Forsyth, 37 Ill. App. 3d 6, 345 N.E.2d 149 (1976),* as examples of cases where the prerequisite minimum contacts were lacking.

As noted earlier, the trial court relied upon *Weiden v. Benveniste, 298 Ill. App. 3d 531, 699 N.E.2d 151, 232 Ill. Dec. 704 (1998).* The trial court correctly concluded that the facts in *Weiden* were distinguishable from the instant case. Unlike the trial court, however, we do not believe that knowledge on the part of the physician that the patient is from another state is a dispositive factor, particularly where the doctor has a localized practice. In *Weiden,* because there was *no* contact between the defendant physicians and Illinois, the court did not need to address the sufficiency [**1045] of any contact and

357 Ill. App. 3d 381, *; 827 N.E.2d 1031, **;
2005 Ill. App. LEXIS 367, ***; 293 Ill. Dec. 150

did not really need to apply the jurisdictional standards of due process-- state or federal-- to the facts of that case.

The instant case is factually similar to *Kennedy v. Freeman, 919 F.2d 126 (10th Cir. 1990),* and we agree with its analysis and holding. We conclude that the exercise of personal [***38] jurisdiction over defendants comports with federal due process standards. Our independent research has revealed several other court decisions that have held the exercise of personal jurisdiction over defendants to be appropriate under similar facts, *i.e.,* where a defendant accepted a pathology [*398] sample of a patient, subsequently sent a diagnostic report to the physician in the forum state, and knew that the report would be the basis of further treatment in the forum state. See, *e.g., Sanders v. Ball, 1999 U.S. Dist. LEXIS 9074, No. Civ. A. 98-2715 (E.D. La. June 11, 1999); Gonzales v. Chandel, 13 F. Supp. 2d 1197 (D.C. Kan. 1998); Urspruch v. Greenblum, 968 F. Supp. 707 (S.D. Ga. 1996); Pomerantz v. Wolfin, 236 A.D.2d 379, 653 N.Y.S.2d 37 (1997); Durette v. International Cancer Screening Laboratories, Inc., 1995 Mass. Super. LEXIS 494, 3 Mass. L. Rptr. 604 (March 9, 1995).*

Pursuant to *Rollins,* we must now turn to the question of whether the exercise of personal jurisdiction over defendants comports with the Illinois due process guaranty. Specifically, we must determine whether it is "fair,

just, and reasonable to require a nonresident defendant to defend an action [***39] in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois." *Rollins v. Ellwood, 141 Ill. 2d at 275, 565 N.E.2d at 1316.* Defendants' activities, through their national operation, have affected a significant interest in Illinois - the health of one of its citizens. Thus, we conclude that it is fair, just and reasonable to require defendants to defend a negligence action against them in Illinois. In the instant case, although mindful of the *Robbins* court concerns, for the same reasons that Illinois assertion of personal jurisdiction over defendants would not offend the federal due process guaranty, we believe that Illinois due process concerns are satisfied.

CONCLUSION

In accordance with the foregoing, we affirm the decision of the circuit court of Cook County denying defendants' motion to quash service of summons and denying defendants' motion to dismiss this action for lack of personal jurisdiction. We remand this matter to the trial court for further proceedings consistent with this opinion.

O'BRIEN and NEVILLE, JJ., concur.



JOSEPH C. SANDERS, ET AL. VERSUS DR. NIGEL J. BALL, ET AL.

CIVIL ACTION NO. 98-2715 SECTION "K"(3)

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF
LOUISIANA

*1999 U.S. Dist. LEXIS 9074*

June 11, 1999, Decided
June 11, 1999, Filed; June 14, 1999, Entered

**DISPOSITION:** [*1] Motion to Dismiss for Lack of Personal Jurisdiction filed by Dr. Nigel J. Ball ("Ball") and Dermatopathology Services, Inc. ("Dermatopathology") DENIED.

**COUNSEL:** For JOSEPH C SANDERS, plaintiff: Delbert Gene Talley, Delbert G. Talley, Attorney at Law, Covington, LA.

For NIGEL J BALL, DERMATOPATHOLOGY SERVICES, P.C., defendants: Edward J. Rice, Jr., Arthur Hickham, Jr., Adams & Reese, New Orleans, LA.

**JUDGES:** STANWOOD R. DUVAL, JR., UNITED STATES DISTRICT COURT JUDGE.

**OPINION BY:** STANWOOD R. DUVAL, JR.

**OPINION**

*ORDER AND REASONS*

Before the Court is a Motion to Dismiss for Lack of Personal Jurisdiction filed by Dr. Nigel J. Ball ("Ball") and Dermatopathology Services, Inc. ("Dermatopathology") which was set for hearing on May 5, 1999. The Court has reviewed the pleadings, memoranda and the relevant law and finds no merit in the motion for the reasons that follow.

**Background**

This medical malpractice action was filed on September 15, 1998 by Dr. Joseph C. Sanders ("Sanders") on behalf of his minor son, Brandon Sanders ("Brandon").

After a series of nosebleeds, Brandon had a skin lesion (mole) on his nose biopsied on October 4, 1997, by Dr. Frank Henchy, a dermatologist in Louisiana. [*2] Dr. Henchy then sent the lesion to Dermatopathology and Dr. Nigel Ball in Alabama to be examined. Dr. Henchy apparently sends tissue samples to Dermatopathology because he trained under one of the founders of the company. (Opposition, Exh. A, Affidavit of Ball, P 10). Sanders asserts that the biopsy was incorrectly diagnosed by Dr. Ball as a benign angioma, which indicated that there was no cancer present. However, after the mole continued to grow, a second biopsy revealed that the lesion was actually a malignant squamous cell tumor.

Plaintiff filed the instant suit against Ball and Dermatopathology, alleging breach of the appropriate standard of care by (1) failing to interpret the biopsied tissue; (2) failing to discover the cancer; (3) misdiagnosing the malignant squamous cell carcinoma as a benign angioma; and (4) other acts of negligence. Plaintiff seeks damages in the amount of $ 420,000 for the scarring of the nose, past, present and future pain and suffering and for fear of cancer.

**Basis for Motion to Dismiss**

Dr. Ball and Dermatopathology move to dismiss the suit pursuant to *Fed. R. Civ. P. 12(b)(2)*. They contend that because they are both located in Alabama, they [*3] do not have sufficient contacts with Louisiana to give rise to personal jurisdiction over them in this state. Defendants argue that they have not purposefully availed themselves of the privilege of conducting activities within Louisiana. Furthermore, they assert that they did not reasonably anticipate being hailed into court here. As support for these contentions, defendants aver:

1999 U.S. Dist. LEXIS 9074, *

1) they are located in Alabama and have no offices in Louisiana;

2) none of the medical treatment performed by defendants was done in Louisiana;

3) Ball is not licensed to practice medicine in Louisiana and Dermatopathology has never done business in Louisiana;

4) neither defendant has done any advertising or performed any work in Louisiana; and

5) the only connection they have with Louisiana is that they sometimes receive tissue samples taken from Louisiana patients for review.

In addition to asserting an absence of minimum contacts, defendants also argue that finding personal jurisdiction in this case would adversely affect the availability of medical treatment for out-of-state residents. They contend that doctors would be reluctant to provide medical services to an out-of-state [*4] resident for fear of litigation in distant states. Furthermore, because several states require physicians to pay a premium into a patient's compensation fund in order to be eligible for limited malpractice liability, defendants argue that it would be economically unfeasible for doctors to pay into every state which has such a requirement. This reality would further diminish the willingness of doctors to provide medical services to nonresidents.

Defendants also argue that the review of tissue samples sent by Louisiana to an Alabama laboratory and pathologist does not constitute the practice of medicine in Louisiana and therefore they are not subject to personal jurisdiction. They also note that a Louisiana medical license is not required in order for an Alabama pathologist to review a tissue sample from Louisiana. Relying primarily on *Kennedy v. Ziesmann, 526 F. Supp. 1328 (E.D. Ky. 1981)*, defendants contend that the malpractice occurred in the state of the treatment (Alabama), not in the state where the patient resided (Louisiana). In *Ziesmann*, a Kentucky resident alleged malpractice against an Ohio physician regarding medical services performed in Ohio. The court held that [*5] the cause of action in Ohio did not arise from the doctor's activities with Kentucky merely because he treated a nonresident who then returned to Kentucky. Therefore, defendants contend that finding personal jurisdiction would not satisfy the constitutional requirements of due process.

**Plaintiff's Response**

Sanders relies on the Long-Arm Statute of the Louisiana, *La. Rev. Stat. 13:3201* which provides for personal jurisdiction over nonresident defendants in certain circumstances. Sanders contends that jurisdiction is established because defendants purposefully and continuously directed their actions toward Louisiana. Defendants in the matter before the Court have accepted tissue samples from Dr. Henchy on a regular basis. The samples were received and returned by mail. In fact, approximately 10% of the tissue samples received by defendants come from a single state: Louisiana. [1] Finally, and perhaps most importantly, Sanders asserts that the services performed obviously created revenue for defendants. Based on that course of conduct, plaintiff contends that the rationale in *Kennedy v. Freeman, 919 F.2d 126 (10th Cir. 1990)* provides a legal basis for the Court to find personal [*6] jurisdiction over defendants.

1    The affidavits received from the defendants aver that "less than 10%" of the tissue samples reviewed are form Louisiana. The Court assumes that if the amount were substantially less than that, this figure would have been decreased appropriately.

Sanders also rejects defendants' claim that the "treatment" was performed outside of Louisiana. To the contrary, Sanders argues that the entire treatment of Brandon was performed in state. Defendants accepted the sample knowing its importance and that the diagnosis would be the basis of further treatment in Louisiana. Thus, Sanders contends that personal jurisdiction exists in the present case.

**Analysis**

Where the facts are not in dispute, the determination of personal jurisdiction over a nonresident is a question of law. *Wilson v. Belin, 20 F.3d 644, 647 (5th Cir.), cert. denied, 513 U.S. 930, 115 S. Ct. 322, 130 L. Ed. 2d 282 (1994)*. A federal court sitting in diversity may assert personal jurisdiction if (1) the state's [*7] long-arm statute applies, as interpreted by the state's courts; and (2) if due process is satisfied under the *Fourteenth Amendment to the United States Constitution. Cycles. Ltd. V. W.J. Digby, Inc., 889 F.2d 612, 616 (5th Cir. 1989)*. In the present case, Sanders bears the burden of making a prima facie showing of sufficient contacts to establish personal jurisdiction over the nonresident. *Bullion v. Gillespie, 895 F.2d 213 (5th Cir. 1990)*. In doing so, however, the Court must accept the allegations of the complaint as true except as controverted by the defendant's affidavits, and conflicts in the affidavits are re-

1999 U.S. Dist. LEXIS 9074, *

solved in plaintiff's favor. *Asarco, Inc. v. Glenara, Ltd., 912 F.2d 784 (5th Cir. 1990).*

**Application of Louisiana's Long Arm Statute**

The Louisiana Supreme Court has held that the state's long-arm statute confers personal jurisdiction to the limits of due process. *First Guaranty Bank of Hammond v. Attorneys Liability Assurance Society, 515 So. 2d 1080, 1083 (La. 1987).* In addition, *La. Rev. Stat. 13:3201* provides, in part, personal jurisdiction over nonresidents regarding activities:

> Causing injury or damage in this state by an offense or quasi [*8] offense committed through an act or omission outside of this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives revenue from goods used or consumed or services rendered in this state.

*La. Rev. Stat. § 13:3201 (A)(4)* (emphasis added). Defendants receive and examine tissue from several states, including Louisiana, on a regular basis. Furthermore, Louisiana alone constitutes approximately 10% of all out-of-state tissue samples. Although the record is silent on the exact dollar amount, it can be fairly assumed that Defendants receive a healthy revenue from Louisiana residents. The Court will now turn to the issue of whether exercising jurisdiction over Ball and Dermatopathology fulfills due process requirements.

**Due Process**

In order to satisfy due process, a two-pronged test must be satisfied in order for a court to exercise personal jurisdiction: (1) the nonresident must have minimum contacts with the forum state; and (2) the exercising of jurisdiction must be consistent with traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. [*9] 154, 90 L. Ed. 95 (1945).*

The "minimum contact" prong of the inquiry may be further subdivided into contacts that give rise to "specific" personal jurisdiction and those that give rise to "general" personal jurisdiction." Specific personal jurisdiction is appropriate when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action. General

personal jurisdiction will attach, even if the nonresident defendant's contacts with the forum state are not directly related to the cause of action, if the defendant's contacts with the forum state are continuous and systematic.

*Felch v. Transportes Lar-Mex Sa Da CV, 92 F.3d 320, 324 (5th Cir. 1996).* To be subject to specific jurisdiction under the minimum contact test, the nonresident defendant must have purposefully availed himself or itself of the privilege of conducting activities in-state, thereby invoking the benefits and protections of the forum state's laws, and the nonresident "should [have] reasonably anticipated being hailed into court." *Ruston Gas Turbines, Inc. v. Donaldson Co., 9 F.3d 415, 419 (5th Cir. 1993).*

**_Minimum Contacts: Specific Jurisdiction_**  [*10]

In this instance, as previously noted, defendants accept in the neighborhood of 10% of the tissue that they analyze from the state of Louisiana. Obviously, as a lab that analyzes such tissue, these doctors do not "treat" the patients affected by their diagnosis, rather the treatment and thus the effect of their diagnoses by definition occurs wherever the specimen originates. Certainly, as such, Dr. Ball and Dermatopathology can reasonably anticipate being hailed into court in Louisiana. They obviously have earned income from this practice. If they had not been paid by a Louisiana resident, it would be expected that they would have relied on Louisiana courts to recover such sums. Thus, they would be able to avail themselves of the protection of Louisiana laws.

This conclusion is supported by *Kennedy v. Freeman, 919 F.2d 126 (10th Cir. 1990).* In Freeman, a pathologist in Texas, Robert Freeman, accepted a tissue sample from the plaintiff Marsh Kennedy's physician Dr. Dosser who were located in Oklahoma. Freeman rendered his report to Dosser in Oklahoma which report was inaccurate resulting in an incorrect course of treatment that resulted in Freeman being diagnosed four years [*11] later with malignant melanoma that had spread over her entire body. The Tenth Circuit found that an Oklahoma court could exercise specific jurisdiction over Freeman. In doing so, it stated as a general proposition:

> In order to establish specific jurisdiction, the defendant must do some act that represents an effort by the defendant to "purposefully avail[] itself of the privilege of conducting activities within the forum State." *Hanson v. Denckla, 357 U.S. 235,*

1999 U.S. Dist. LEXIS 9074, *

*253, 78 S. Ct. 1228, 1240, 2 L. Ed. 2d 1283 (1958)*; *Rambo v. American Southern Ins. Co., 839 F.2d [1415], 1417*. A defendant does so when she purposefully directs her foreign act so that they have an effect in the forum state. *Lanier v. American Bd. of Endodontics, 843 F.2d 901, 910 (6th Cir.), cert. denied, 488 U.S. 926, 109 S. Ct. 310, 102 L. Ed. 2d 329 (1988)*.

The purposeful availment requirement serves two functions. First, it identifies acts that a defendant would reasonably expect to subject her to jurisdiction in the particular forum. Second, it ensures that only the defendant's acts directed at the forum establish jurisdiction. *Rambo, 839 F.2d at 1419* (citing *Burger King v. Rudzewicz,* [*12] *471 U.S. 462, 474-75, 105 S. Ct. 2174, 2183-84, 85 L. Ed. 2d 528 (1985))*. Random, fortuitous or unilateral acts of other parties cannot be the basis for jurisdiction. *Id.*

*Kennedy, 919 F.2d at 128-29.*

Using that framework the Court found specific jurisdiction noting that while Freeman did not solicit Kennedy's business in Oklahoma, he did purposefully direct his actions there. He accepted the sample willingly; he delivered a report under his signature in which he allegedly misread the thickness of the lesion (which caused plaintiff's treating physician to render the wrong medical treatment); and he apparently sent his bill to Oklahoma. As the Court stated "Freeman rendered his diagnosis to Kennedy in Oklahoma, through the mail, knowing its extreme significance and that it would be the basis of Kennedy's further treatment there." *Id.*

The Court finds such analysis highly persuasive. In the instant suit, defendants in this case clearly and purposefully directed their actions toward Louisiana. Defendants routinely and willingly accepted the samples from Louisiana. In addition, Dr. Ball made a diagnosis and then sent it through the mail knowing its extreme significance [*13] and knowing it would be the basis of Brandon's further treatment. The fact that defendants kept regular contact with Dr. Henchy in Louisiana coupled with their administration of the medical needs of other in-state residents demonstrates the necessary minimum contacts. *Bullion v. Gillespie, 895 F.2d 213, 216 (5th Cir. 1990)*.

**Traditional Notions of Fair Play and Substantial Justice.**

The Court now must examine whether exercising jurisdiction over the defendants would not "offend traditional notions of fair play and substantial justice." *International Shoe, 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154*. With respect to the second prong, a Court should consider:

> the burden on the defendant, the interest of the forum State, and the plaintiff's interest in obtaining relief. [The court] must also weigh in its determination "the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies.

*Asahi Metal Ins. Co. v. Superior Court of California, 480 U.S. 102, 115, 107 S. Ct. 1026, 1033, 94 L. Ed. 2d 92 (1987).*

The Court finds [*14] that the burden on defendants in defending this suit in Louisiana does not offend notions of fair play and substantial justice. It cannot be said that defendants could not have reasonably anticipated being hailed into Court in Louisiana. Certainly, defendants would know that any misdiagnosis on their part would result in harm in the location where the actual patient resides. This case is not analogous to the instance where a patient purposefully goes to another state, is treated there and then returns to the home state and sues the out of state doctor for malpractice. The course of conduct presented here cannot be said to be random, fortuitous or a unilateral act of plaintiff. The difference lies in the fact that the defendants in this instance send reports into Louisiana, accept business from doctors in Louisiana and thus have a presence of sort in Louisiana. Furthermore, the proximity of Alabama and Louisiana present little burden for the purpose of litigation.

The state interests in this case are also legitimate and outweigh the defendants' concerns. Louisiana has an interest in protecting its citizens and preventing malpractice. Defendants would have access to Louisiana courts [*15] to settle claims. Therefore, they cannot reasonably expect to benefit from their relationship with the forum state, yet be shielded from suit for malpractice in this state because they are nonresidents. Louisiana has a legitimate interest in preventing this alleged type of wrongdoing.

Thus, for all of these reasons, the Court finds that the second prong of this test is met. Accordingly,

**IT IS ORDERED** that the Motion to Dismiss is **DENIED.**

1999 U.S. Dist. LEXIS 9074, *

New Orleans, Louisiana, this 11th day of June, 1999.

STANWOOD R. DUVAL, JR.

UNITED STATES DISTRICT COURT JUDGE



AUGUSTINE GONZALES, Plaintiff, v. M.K. CHANDEL, M.D., a/k/a/ MAHEN-
DRA KUMAR CHANDEL, M.D., STEVENS COUNTY HOSPITAL, STEVENS
COUNTY HOSPITAL RURAL HEALTH CLINIC, a/k/a STEVENS COUNTY
MEDICAL CLINIC and DAVID G. MUTHALI, M.D., Defendants.

CIVIL ACTION NO. 96-1392-JTM

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS

*13 F. Supp. 2d 1197; 1998 U.S. Dist. LEXIS 12496*

July 31, 1998, Decided
July 31, 1998, Filed

**DISPOSITION:** [**1] Defendant David G. Muthali, M.D.'s motion to dismiss for lack of personal jurisdiction (Doc. 30) denied.

**COUNSEL:** For AUGUSTINE GONZALES, plaintiff: Francis C. McMaster, McMaster & McMaster, Wichita, KS.

For AUGUSTINE GONZALES, plaintiff: Fred Spigarelli, Spigarelli, McLane & Short, Pittsburg, KS.

For M K CHANDEL, M D, defendant: J Stephen Walker, Ontonagon, MI.

For STEVENS COUNTY HOSPITAL, STEVENS COUNTY HOSPITAL RURAL HEALTH CLINIC, defendants: Thomas M. Sutherland, Brent G. Wright, Holbrook, Heaven & Fay, P.A., Kansas City, KS.

For DAVID G MUTHALI, M.D., defendant: Gary M. Austerman, Christopher A. McElgunn, Klenda, Mitchell, Austerman & Zuercher, L.L.C., Wichita, KS.

For M K CHANDEL, cross-claimant: J Stephen Walker, Ontonagon, MI.

For STEVENS COUNTY HOSPITAL, STEVENS COUNTY HOSPITAL RURAL HEALTH CLINIC, cross-defendants: Thomas M. Sutherland, Brent G. Wright, Holbrook, Heaven & Fay, P.A., Kansas City, KS.

**JUDGES:** J. Thomas Marten, United States District Judge.

**OPINION BY:** J. Thomas Marten

**OPINION**

[*1198] *MEMORANDUM AND ORDER*

This is a medical malpractice action. The matter is before the court on defendant David Muthali, M.D.'s motion to dismiss for lack of personal [**2] jurisdiction. (Doc. 30).

The plaintiff, a resident of Hugoton, Kansas, at the time of the alleged malpractice,[1] was referred to defendant Muthali by his Hugoton physician, defendant Chandel. Dr. Muthali practices medicine at Texas Tech University in Amarillo, Texas. Muthali had never met plaintiff or Dr. Chandel, had never been to Kansas, and had never advertised or solicited business in Kansas.

> 1 According to the complaint, plaintiff resided in Oklahoma at the time the action was filed. (Doc. 1).

Muthali first saw plaintiff on September 16, 1994, for treatment of a pulmonary condition. Dr. Muthali suggested plaintiff get sputum smears collected in Kansas and have them sent back to him in Texas. Muthali contacted Chandel, who agreed to coordinate the sending of the sputum samples to Texas.

Plaintiff returned to Texas to see Muthali on September 30, 1994. At that time, Muthali recommended

13 F. Supp. 2d 1197, *; 1998 U.S. Dist. LEXIS 12496, **

hospitalization at Northwest Texas Hospital in Amarillo for treatment of tuberculosis. The plaintiff declined, stating [**3] he wanted to go to Steven County Hospital in Hugoton, Kansas. Muthali, therefore, sent a fax to Dr. Chandel stating his recommendations for treatment, including length of hospital stay, course of four-drug therapy, and further testing. Dr. Muthali requested to see the plaintiff again after four weeks.

Plaintiff alleges Dr. Muthali misdiagnosed his condition, failing to discover that plaintiff had lung cancer.

[*1199]   *K.S.A. § 60-308(b)(2)* provides that the Kansas courts have jurisdiction over a person who "commits a tortious act within this state." The Kansas long arm statute is construed liberally to allow personal jurisdiction to the full extent permitted by due process. *Federated Rural Elec. v. Kootenai Elec., 17 F.3d 1302, 1305 (10th Cir. 1993).*

A plaintiff may demonstrate a defendant has had sufficient minimum contacts with the forum state in one of two ways. Specific jurisdiction exists when the defendant purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws, and the claims against it arise out of those contacts. *Kuenzle v. HTM Sport-Und Freizeitgerate AG, 102 F.3d 453, 456 (10th Cir. [**4] 1996).* General jurisdiction lies when the defendant's contacts with the forum state are so continuous and systematic that the state may exercise personal jurisdiction even when the claims are unrelated to the defendant's contacts with the forum state. *Trierweiler v. Croxton and Trench Holding Corp., 90 F.3d 1523, 1532-33 (10th Cir. 1996).*

The issue in this case is one of specific jurisdiction. Dr. Muthali contends he did not purposefully avail himself of the privilege of conducting business in Kansas because he never set foot in the state, never solicited business in Kansas, and only saw the plaintiff as a result of the plaintiff's own (or his Kansas physician's) unilateral actions. The court disagrees.

In *Kennedy v. Freeman, 919 F.2d 126 (10th Cir. 1990),* the Tenth Circuit Court of Appeals held that the Oklahoma district court had personal jurisdiction over a Texas physician who willingly accepted tissue samples from Oklahoma, tested the samples in Texas, and sent the results, along with his bill, back to Oklahoma, knowing the importance of the tests for plaintiff's treatment in Oklahoma. *Id. at 129.* Like the Kansas law, the reach of the Oklahoma long arm statute is [**5] as broad as the Constitution allows. *Id.* (quoting *Okla. Stat. tit. 12, § 2004(f)).* The court held that although Dr. Freeman, like Dr. Muthali in this case, did not solicit business in the forum state, he did direct his actions there. *Id.*

In this case, there is no evidence that Dr. Muthali mailed his test results back to Kansas, and there is no evidence where his bill was sent. He did, however, call Dr. Chandel in Kansas and fax information to him. He asked Dr. Chandel's office to send him sputum samples for testing. Furthermore, while the defendant in *Kennedy* knew the results of his tests would determine the course of the plaintiff's treatment, here Dr. Muthali directly told Dr. Chandel what treatment the plaintiff should receive in light of the test results. The court concludes under the Tenth Circuit's holding in *Kennedy* that this case meets the "purposeful availment" requirement, giving this court jurisdiction over Dr. Muthali. *See also Ray v. Heilman, 660 F. Supp. 122 (D. Kan. 1987)* (holding district court in Kansas had personal jurisdiction over Missouri doctor who telephoned prescription to Kansas pharmacist, arranged for decedent to have monthly tests in [**6] Kansas and for the results to be communicated to him in Missouri, and consulted with decedent several times over the phone about his condition).

**IT IS BY THIS COURT THEREFORE ORDERED** that defendant David G. Muthali, M.D.'s motion to dismiss for lack of personal jurisdiction (Doc. 30) is hereby denied.

At Wichita, Kansas, this *31st* day of *July*, 1998.

J. Thomas Marten

United States District Judge



ROBERT W. URSPRUCH, Surviving Spouse and Executor of the Estate of DEBRA A. URSPRUCH, Deceased, Plaintiff, v. JESSE S. GREENBLUM, M.D., P.A., d/b/a FERNANDINA BEACH OB/GYN, a Florida Corporation, E. WILLIAM MCGRATH, JR., M.D., HERBERT ICHINOSE, M.D., a Louisiana Professional Medical Corporation, and UNITED STATES OF AMERICA, Defendant.

CIVIL ACTION NO. CV296-71

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF GEORGIA, BRUNSWICK DIVISION

*968 F. Supp. 707; 1996 U.S. Dist. LEXIS 21121*

December 23, 1996, Decided
December 23, 1996, Filed

**DISPOSITION:** [**1] Ichinose APMC's Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to FRCP 12(b)(2) DENIED.

**COUNSEL:** For Plaintiff: John S. Myers, St. Marys, Georgia. Joshua A. Whitman, Jacksonville, Florida.

For Defendants: William T. Stone, Cole, Stone, Whitaker & Stoudemire, P.A., Jacksonville, Florida. M. Lynn Frey, III, Wallace Eugene Harrell, Gilbert, Harrell, Gilbert, Brunswick, Georgia. Stewart E. Niles, Jr., Michael L. Dubos, Jones, Walker, Waechter, Poitevent, Carrare & Denegre, New Orleans, Louisiana. Kenneth D. Crowder, Assistant United States Attorney, Augusta, Georgia. Chilton Davis Varner, King & Spaulding, Atlanta, Georgia.

**JUDGES:** Anthony A. Alaimo, JUDGE, UNITED STATES DISTRICT COURT, SOUTHERN DISTRICT OF GEORGIA

**OPINION BY:** Anthony A. Alaimo

**OPINION**

[*709] *ORDER*

Plaintiff, Robert W. Urspruch, brings this claim against various defendants, including Herbert Ichinose, M.D., a Professional Medical Corporation ("Ichinose APMC"), alleging that they were negligent in failing to detect cervical cancer in his wife, which caused her death. Currently before the Court is a motion by Ichinose APMC to dismiss the claims brought against it for lack of personal jurisdiction. For the reasons stated [**2] below, the motion to dismiss will be DENIED.

*FACTS*

Plaintiff's wife, Debra Urspruch ("Debra"), received medical care at the Kings Bay Naval Submarine Base Medical Clinic ("Medical Clinic"), which is located at Kings Bay, Georgia, from September, 1989 through September, 1994. (Pl.'s Mem. of Law in Supp. Opp'n to Def. Ichinose's Mot. to Dismiss for Lack of Personal Jurisdiction at 1.) On August 5, 1993, Debra went to the Medical Clinic for her annual gynecological exam, at which time a PAP smear was performed. The PAP smear test results were reported as "normal." (*Id.* at 2.) Debra, however, was diagnosed with invasive squamous cell carcinoma of the cervix (cervical cancer) in September, 1994, and subsequently died on October 3, 1995, as a result of the cancer metastasizing. (*Id.* at 1.)

Kings Bay contracted with Dermatopathology, Inc., a Louisiana corporation, to provide cytology and pathology support services to the Medical Clinic. Beverly Ichinose, wife of Herbert Ichinose, negotiated and executed this contract. (Mem. in Supp. of Mot. to Dismiss for Lack of Personal Jurisdiction Pursuant to FRCP 12(b)(2) at 6.) Pursuant to the contract, Dermatopathology [**3] screened all PAP smear specimens and prepared cytology reports that were sent to the Medical Clinic. In 1993, nearly 2, 300 specimens were sent to

968 F. Supp. 707, *; 1996 U.S. Dist. LEXIS 21121, **

Dermatopathology for screening. (Pl.'s Mem. of Law in Supp. Opp'n to Def. Ichinose's Mot. to Dismiss for Lack of Personal Jurisdiction at 6.) Dermatopathology employed several cytologists who screened the specimens. In addition, Dermatopathology contracted with Ichinose APMC to provide pathology support.

Although separate corporate entities, Dermatopathology and Ichinose APMC share the same address and telephone number. (*Id.* at 4.) At the time that Debra's cytology report was prepared, Herbert Ichinose was the President and sole shareholder of Dermatopathology. (*Id.*) Herbert Ichinose also was the President of Ichinose APMC. (*Id.*) Beverly Ichinose was the secretary/treasurer of Ichinose APMC. (*Id.*)

Debra's PAP smear specimen was forwarded to Dermatopathology for screening, in accordance with its contract with Kings Bay. Plaintiff alleges that Ichinose APMC screened the specimen and prepared the cytology report. (Pl.'s Mem. of Law in Supp. Opp'n to Def. Ichinose's Mot. to Dismiss for Lack of Personal Jurisdiction at 2.) The [**4] cytology [*710] report was printed on a standard form bearing Ichinose APMC's letterhead, and Herbert Ichinose's name appeared at the bottom of the report under a line designated "Pathologist." (*Id.* Ex. A.) Ichinose APMC, conversely, alleges that the cytology report was not prepared by Ichinose APMC, but rather was prepared by Jose Dardano, a cytotechnologist employed by Dermatopathology. (Mem. in Supp. of Mot. to Dismiss for Lack of Personal Jurisdiction Pursuant to FRCP 12(b)(2) at 2.) Jose Dardano's name also appears at the bottom of the report under a line designated "Cytologist," but no reference to Dermatopathology is made anywhere on the report.

*DISCUSSION*

*I. Standard of Review*

Ichinose APMC moves for dismissal pursuant to *Federal Rule of Civil Procedure 12(b)(2)* for lack of personal jurisdiction. Plaintiff, as the party invoking the jurisdiction of the Court, bears the burden of establishing the Court's jurisdiction over a nonresident defendant. *Atlanta Gas Light Co. v. Semaphore Advertising, Inc., 747 F. Supp. 715, 721 (S.D. Ga. 1990)* (citation omitted). In the absence of an evidentiary hearing, Plaintiff satisfies his burden by making out only [**5] a *prima facie* case of jurisdiction. *Francosteel Corp. v. M/V Charm, 19 F.3d 624, 626 (11th Cir. 1994)* ("*Francosteel II*"). A *prima facie* case is established if the plaintiff presents sufficient evidence to withstand a motion for directed verdict. [1] *Id.* Accordingly, the Court must consider the evidence in the light most favorable to the nonmovant, and all reasonable inferences must be drawn in favor of the nonmovant. *Id.* (citing *MacPherson v. University of Montevallo, 922 F.2d 766, 770 (11th Cir. 1991)*).

1   In considering a motion for directed verdict, if the Court believes that reasonable persons exercising impartial judgment could not arrive at a contrary verdict, then the Court must grant a directed verdict. However, if reasonable persons exercising impartial judgment could reach different conclusions, then it is improper for the Court to grant a directed verdict. *Francosteel II, 19 F.3d at 626-27* (citing *MacPherson v. University of Montevallo, 922 F.2d 766, 770 (11th Cir. 1991)*).

[**6]   *II. Personal Jurisdiction*

"In a diversity action, a federal court may assert jurisdiction over a nonresident defendant only to the extent permitted by the long-arm statute of the forum State, and only if the exercise of jurisdiction comports with the requirements of the *Due Process Clause of the Fourteenth Amendment.*" *Francosteel Corp. v. M/V Charm, 825 F. Supp. 1074, 1076 (S.D. Ga. 1993)* (citation omitted) ("*Francosteel I*"), *aff'd Francosteel II, 19 F.3d 624*. The Court, therefore, has personal jurisdiction over Ichinose APMC if (1) Georgia's long arm statute permits the exercise of personal jurisdiction and (2) the requirements of due process are satisfied.

A. Georgia's Long Arm Statute

Georgia's long arm statute provides that personal jurisdiction may be exercised over any nonresident who commits a tortious injury in Georgia caused by an act outside of Georgia, if the tortfeasor "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from . . . services rendered in [Georgia]." *Ga. Code Ann. § 9-10-91 (3)* (Michie 19). The long arm statute has been interpreted as conferring personal [**7] jurisdiction to the maximum extent allowed by due process. *E.g., Francosteel II, 19 F.3d at 627.* "When the courts of the forum State have interpreted the forum's long-arm statute to confer jurisdiction to the limits allowed by federal due process, state law need not be applied: [the Court] need only ask whether the exercise of jurisdiction over the nonresident defendant comports with due process." *Francosteel I, 825 F. Supp. at 1077* (citation omitted). Accordingly, the Court need only address due process concerns with respect to the exercise of personal jurisdiction over Ichinose APMC.

B. Due Process

A two-prong test is used to determine if the exercise of personal jurisdiction over a nonresident comports with due process. First, the nonresident purposefully must have established minimum contacts with the forum State.

968 F. Supp. 707, *; 1996 U.S. Dist. LEXIS 21121, **

*See World-Wide Volkswagen* [*711] *Corp. v. Woodson, 444 U.S. 286, 297, 100 S. Ct. 559, 562, 62 L. Ed. 2d 490, 501 (1980); Francosteel II, 19 F.3d at 627.* Second, the exercise of jurisdiction must not offend the "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 158,* [**8] *90 L. Ed. 95, 102 (1945); Francosteel II, 19 F.3d at 627.*

### 1. Minimum Contacts

Sufficient minimum contacts exist if (1) the contacts are related to the plaintiff's cause of action or give rise to it, (2) the contacts involve some act by which the nonresident purposefully avails itself of the privilege of conducting activities within the forum, and (3) the contacts are such that the nonresident should reasonably anticipate being hauled into court in the forum. *Francosteel II, 19 F.3d at 627.*

Ichinose APMC contends that it has no contacts with the State of Georgia. (Mem. in Supp. of Mot. to Dismiss for Lack of Personal Jurisdiction Pursuant to FRCP 12(b)(2) at 5.) Specifically, Ichinose APMC claims that it was not involved in either the execution or subsequent modifications to the contract between Dermatopathology and Kings Bay, it did not screen Debra's specimen, and it has never had any communications with State of Georgia. (*Id.* at 8.)

The Court, however, is persuaded that Ichinose APMC indeed does have contacts with the State of Georgia. Since all reasonable inferences must be made in favor of the nonmovant, the Court is bound to find that Ichinose APMC prepared [**9] Debra's cytology report. Plaintiff alleges that Ichinose APMC prepared the report, and this allegation has factual support since the report bears only Ichinose APMC's letterhead and Herbert Ichinose's name appears below.

The Court is further persuaded that the contacts Ichinose APMC has with the State of Georgia are sufficient to exercise jurisdiction. First, the contacts are related to Plaintiff's cause of action since the cytology report was relied upon by Debra's doctors in making their diagnosis. Second, Ichinose APMC purposefully has availed itself of the privilege of conducting activities within Georgia. The fact that every cytology report was prepared on a form bearing Ichinose APMC's letterhead indicates that Ichinose APMC was involved in the screening of specimens received from the Medical Clinic. It is implausible that Ichinose APMC allowed its letterhead to be printed on every medical report, but yet had no involvement with their preparation. Furthermore, Ichinose APMC must have known that these reports were being sent to the Medical Clinic, given the numerous close ties between Ichinose APMC and Dermato-

pathology. In allowing the cytology reports to be printed on a form [**10] bearing its letterhead, Ichinose APMC represents to the recipients of such reports that it has screened the specimen sample. Ichinose APMC receives benefits from this arrangement, in the form of increased business and circulation of its name to the public. Third, Ichinose APMC reasonably should expect to be brought into court in Georgia. Ichinose APMC does not contend that it never screens specimens received from the Medical Clinic and, thus, it is logical to conclude that it screened such samples since it contracted with Dermatopathology to provide pathology support services. Again, it also is logical to conclude that Ichinose APMC knew that the medical reports it prepared were sent to the Medical Clinic located at Kings Bay, Georgia. Ichinose APMC, therefore, should reasonably expect that it may have to answer to a suit filed in a court in Georgia.

### 2. Fair Play and Substantial Justice

Exercise of personal jurisdiction over a nonresident also must not offend the traditional notions of fair play and substantial justice. A number of factors are considered to determine the reasonableness and fairness of the exercise of jurisdiction, including (1) the burden on the nonresident, [**11] (2) the interest of the forum State, (3) the plaintiff's interest in obtaining relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversies, and (5) the shared interest of the States in furthering fundamental substantive social policies. *World-Wide Volkswagen, 444 U.S. at 292, 100 S. Ct. at 564, 62 L. Ed. 2d at 498;* [*712] *see Vermeulen v. Renault, U.S.A., Inc., 985 F.2d 1534, 1551 (11th Cir. 1993).*

Consideration of all of the above factors weighs in favor of the Court's exercise of personal jurisdiction over Ichinose APMC. The burden on Ichinose APMC is slight since Herbert Ichinose must travel only a short distance from Louisiana. Moreover, the interest of Georgia in resolving this dispute is manifest since it has a compelling interest in protecting its residents from receiving negligent medical care. Judicial economy and efficiency also dictate that Ichinose APMC remain in this suit, thus avoiding the necessity of Plaintiff filing a duplicative action in Louisiana.

### CONCLUSION

The Court has considered both parties' positions and arguments carefully. The Motion to Dismiss for Lack of Personal Jurisdiction Pursuant [**12] to FRCP 12(b)(2) **DENIED.**

**SO ORDERED,** this 23 day of December, 1996.

Anthony A. Alaimo

JUDGE, UNITED STATES DISTRICT COURT

968 F. Supp. 707, *; 1996 U.S. Dist. LEXIS 21121, **

SOUTHERN DISTRICT OF GEORGIA



Cathy Pomerantz et al., Respondents, v. Nancy S. Wolfin, Respondent, and David R. Barron et al., Appellants.

96-05160

SUPREME COURT OF NEW YORK, APPELLATE DIVISION, SECOND DE-PARTMENT

*236 A.D.2d 379; 653 N.Y.S.2d 37; 1997 N.Y. App. Div. LEXIS 1069*

December 17, 1996, Argued
February 3, 1997, Decided

**PRIOR HISTORY:**   [**1]   In an action to recover damages for medical malpractice, etc., the defendants David R. Barron, Ruth S. Kleier, Daniel F. Richfield, and David R. Barron, M.D., Inc. d/b/a Richfield Laboratory of Dermatopathology appeal, as limited by their brief, from so much of an order of the Supreme Court, Nassau County (McCabe, J.), dated April 29, 1996, as denied their motion pursuant to *CPLR 3211 (a) (8)* to dismiss the complaint insofar as it is asserted against them for lack of personal jurisdiction.

**DISPOSITION:**   ORDERED that the order is affirmed insofar as appealed from, with one bill of costs payable to the respondents appearing separately and filing separate briefs.

**COUNSEL:** Duane, Morris & Heckscher, New York, N.Y. (David S. Tannenbaum and Robin Feingold Singer of counsel), for appellants.

Sullivan & Liapakis, P.C., New York, N.Y. (Stephen C. Glasser and Albert B. Aquila of counsel), for plaintiffs-respondents.

Gerard J. Marulli, New York, N.Y. (Mario J. Dire of counsel), for defendant-respondent.

**JUDGES:** Rosenblatt, J. P., Joy, Florio and McGinity, JJ., concur.

**OPINION**

[*38]   Ordered that the order is affirmed insofar as appealed from, with one bill of costs payable to the respondents [**2]   appearing separately and filing separate briefs.

The appellants in the regular course of business perform services in an Ohio laboratory, in which, among other things, they analyze biopsies "from particular geographic regions of the country". The plaintiff Cathy Pomerantz, a New York resident, was treated by the defendant Nancy Sue Wolfin, a Long Island dermatologist, for skin lesions. Dr. Wolfin sent excised skin tissues of Mrs. Pomerantz to the laboratory in Ohio for analysis. The appellants analyzed those biopsies, and sent reports of their findings back to the New York doctor. Under these circumstances, the appellants are subject to in personam jurisdiction in New York (*see, CPLR 302 [a] [1]; Kreutter v McFadden Oil Corp., 71 NY2d 460, 467; People v Concert Connection, 211 AD2d 310, 315; Schur v Porter, 712 F Supp 1140; see also, CPLR 302 [a] [3] [ii]*).

The appellants David R. Barron and Daniel F. Richfield contend that their conduct could not have constituted a proximate cause of Mrs. Pomerantz's injury. This contention, however, relates to the merits, and is not properly before us on this appeal from an order denying a motion to dismiss [**3]   pursuant to *CPLR 3211 (a) (8)* for lack of personal jurisdiction.

Rosenblatt, J. P., Joy, Florio and McGinity, JJ., concur.



® LexisNexis®

Michelle Durette v. International Cancer Screening Laboratories, Inc. et al. [1]

1   Sharon K. Rosenthal, M.D.

93-2792

SUPERIOR COURT OF MASSACHUSETTS, AT MIDDLESEX

*1995 Mass. Super. LEXIS 494*

**March 9, 1995, Decided**

**DISPOSITION:**   [*1]   Defendant Sharon K. Rosenthal's motion to dismiss for lack of personal jurisdiction pursuant to *Mass.R.Civ. P. 12(b)(2)* is DENIED.

**JUDGES:** Neel.

**OPINION BY:** NEEL

**OPINION**

MEMORANDUM OF DECISION AND ORDER ON DEFENDANT ROSENTHAL'S MOTION TO DISMISS

Plaintiff Michelle Durette ("plaintiff"), brought this action against defendants International Cancer Screening Laboratories, Inc. ("ICSL") and Sharon K. Rosenthal, M.D., ("Rosenthal") claiming that they negligently delayed the discovery of her cervical cancer. This matter is before the court on Rosenthal's motion, pursuant to *Mass.R.Civ. P. 12(b)(2)*, to dismiss for lack of personal jurisdiction. After hearing, and for the reasons set forth below, Rosenthal's motion is denied.

FACTS

After consideration of the affidavits, deposition transcripts, and other materials submitted, and for purposes of this motion only, I make the following findings of fact. *Heins v. Wilhelm Loh Wetzlar Optical Machinery GMBH & Co. KG, 26 Mass. App. Ct. 14, 17, 522 N.E.2d 989 (1988).*

In March 1990, a pap smear taken from plaintiff in a Massachusetts hospital was sent to ICSL in Texas to be screened for cancer. ICSL returned a report stating that

plaintiff's pap [*2] smear was negative. In September 1991, another pap smear revealed that plaintiff had cervical cancer, requiring her to undergo extensive surgery. Plaintiff claims that ICSL negligently misinterpreted her March 1990 pap smear, and sues ICSL and its medical director at the time, Rosenthal.

Plaintiff is a Massachusetts resident who received all relevant medical treatment in Massachusetts. All work for the screening of plaintiff's pap smear, however, took place in Texas, and was performed by ICSL. Rosenthal, a resident of Texas, was a consultant to ICSL, under contract, from 1984 until August 1990. Rosenthal was not an employee of ICSL; rather, she was an independent contractor who acted as ICSL's medical director. [2] Rosenthal was responsible for all medical operations of the lab, including quality control and supervision. Rosenthal personally reviewed only those pap smears which had been determined to be abnormal. Because plaintiff's March 1990 pap smear had been determined to be normal, Rosenthal did not personally review that sample. Rosenthal's consulting fee of $ 72,000 per year (Boughton Deposition at 40) was paid by ICSL, which derived substantial revenues from services she [*3] and it rendered in Massachusetts.

2   Rosenthal testified by deposition that beginning in 1984, "I was a consulting medical director. I was the physician over there. I was the only pathologist over there." Rosenthal Deposition at 13. See also Robert Boughton, Jr. Deposition at 37.

Rosenthal's name appeared on all reports generated by ICSL for patients in Massachusetts, including approximately 20,000 pap smear reports generated in 1989

1995 Mass. Super. LEXIS 494, *

and 1990. On the report of plaintiff's March 1990 pap smear, Rosenthal's name appears, computer generated, as "S.K. Rosenthal, M.D., Pathologist." Because Rosenthal reviewed only the abnormal pap smear samples and shared the work with two part-time doctors, it is uncertain how many Massachusetts pap smear samples she personally reviewed. Plaintiff estimates that Rosenthal personally examined several hundred pap smears from Massachusetts each year, and I so find. [3]

> 3   Plaintiff estimates that 6.4% of the slides received by ICSL are abnormal and were subject to review by Rosenthal. Thus, of the approximately 20,000 pap smears from Massachusetts sent to ICSL in 1989-90, plaintiff concludes that Rosenthal examined approximately 1,300. Rosenthal notes that she did not review all the abnormal slides, sharing the work with two other doctors. Whatever the exact figures, it is reasonable to infer, for purposes of this motion, that Rosenthal personally examined several hundred pap smear samples from Massachusetts each year during her tenure as medical director of ICSL.

[*4]   Examining a pap smear and reporting findings is a medical service. Rosenthal was aware that ICSL "worked on a nationwide basis" (Rosenthal Deposition at 35); she was also aware that she was "doing things in San Antonio that provided services to people in other states." *Id. at 38*. In 1988 Rosenthal inquired of her insurance company to confirm that she had coverage for all of the continental states for work she did in Texas; she was concerned about having such coverage because she was "providing medical services to patients in those areas." *Id. at 37, 118*.

### DISCUSSION

Plaintiff bears the burden of showing through pleadings, affidavits, and other competent evidence that personal jurisdiction exists. See *Ealing Corp. v. Harrods, Inc., 790 F.2d 978, 979 (1st Cir. 1986)*; *Droukas v. Divers Training Academy, Inc., 375 Mass. 149, 151, 376 N.E.2d 548 (1978)*. Two questions must be answered affirmatively in order for this court properly to exercise personal jurisdiction over Rosenthal: "(1) Is the assertion of jurisdiction authorized by the [Massachusetts longarm] statute, and (2) if authorized, is the exercise of jurisdiction under State law consistent with basic due [*5] process requirements mandated by the United States Constitution?" *Good Hope Industries, Inc. v. Ryder Scott Co., 378 Mass. 1, 5-6, 389 N.E.2d 76 (1979)*; *Bond Leather Co. v. O.T. Shoe Mfg. Co., 764 F.2d 928, 931 (1st Cir. 1985)*.

### A. Longarm Statute

General Laws c. 223A, 3(d) authorizes a court to exercise personal jurisdiction over a person as to a cause of action arising from the person's:

> causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth.

In this case, plaintiff has suffered damages in Massachusetts resulting from an alleged negligent failure in Texas to diagnose her cervical cancer. Plaintiff alleges that Rosenthal, as medical director of ICSL, had a duty properly to monitor, supervise, and train ICSL employees and to maintain quality control, and that she was negligent in performing those duties. Plaintiff's allegations of Rosenthal's negligence state a prima facie case. *See Escude Cruz v. Ortho Pharmaceutical* [*6] *Corp., 619 F.2d 902, 907 (1st Cir. 1980)*. The statutory issue is whether Rosenthal regularly does or solicits business, has engaged "in any other persistent course of conduct," or derives substantial revenue from services rendered, in Massachusetts. [4]

> 4   Plaintiff also argues that personal jurisdiction can be established under subsection 3(a) of the longarm statute, involving causes of action arising from a defendant's "transacting any business" in Massachusetts. Because it finds jurisdiction under 3(d), the Court does not address this additional ground.

"Literal satisfaction of the explicit statutory requirements is sufficient to support the assertion of jurisdiction provided that the statute's implicit due process limitations are not offended." *Heins v. Wilhelm Loh Wetzlar Optical Machinery, supra at 20*. In this case, Rosenthal authorized ICSL's use of her name on the tens of thousands of the Massachusetts pap smear reports generated by ICSL during her tenure as medical director; through those [*7] reports, she arguably provided medical services to tens of thousands of Massachusetts residents over a six year period. In any event, Rosenthal personally examined and reported on hundreds or thousands of abnormal pap smears from Massachusetts patients, and in so doing provided medical services to those patients in Massachusetts. Her actions satisfy the literal requirements of the "persistent course of conduct" language of 3(d). [5] Accordingly, the court holds that the exercise of personal

1995 Mass. Super. LEXIS 494, *

jurisdiction over defendant Rosenthal is authorized by the Massachusetts longarm statute. [6]

> 5   Contrary to defendant's suggestion, there is no requirement under subsection (d) that plaintiff's cause of action arise from defendant's persistent course of conduct in the commonwealth. The "arising from" language refers to the "causing tortious injury" in Massachusetts, not the "persistent course of conduct."
>
> 6   Having so held, the Court need not determine whether her compensation as a consultant, derived in substantial portion from revenues which ICSL received for services she and it rendered in Massachusetts, also subjects her to personal jurisdiction here.

[*8]   B. Due Process

Having determined that Rosenthal's conduct satisfies one of the statutory bases of jurisdiction under the longarm statute, the court must decide whether the exercise of jurisdiction would satisfy the Fourteenth Amendment due process test of "minimum contacts." *Tatro v. Manor Care Inc.*, *416 Mass. 763, 767, 625 N.E.2d 549 (1994)*. Jurisdiction is proper if defendant has sufficient contacts with the forum state, so that the lawsuit would not offend "traditional notions of fair play and substantial justice." *International Shoe*, *326 U.S. 310, 316, 90 L. Ed. 95, 66 S. Ct. 154 (1945)*. The defendant must have purposefully availed herself of the "privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, *357 U.S. 235, 253, 2 L. Ed. 2d 1283, 78 S. Ct. 1228 (1958)*. The activities in the forum state must be of a nature which would allow a nonresident defendant to "reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, *444 U.S. 286, 62 L. Ed. 2d 490, 100 S. Ct. 559 (1980)*.

Personal jurisdiction may be either general or specific. General jurisdiction [*9] "exists when the litigation is not directly founded on the defendant's forum based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state." *Connecticut Nat'l Bank v. Hoover Treated Wood Products Inc.*, *37 Mass. App. Ct. 231, 233 n. 6, 638 N.E.2d 942 (1994)*. In contrast, under specific personal jurisdiction, "the defendant must have transacted business in Massachusetts, and the plaintiff's claim must have arisen from those forum-based contacts." *Id*. Subsection (d) of the longarm statute is predicated on general jurisdiction. *Id*.

A doctor who has "purposefully directed" his actions to the forum state by performing medical services through the mail for a patient in the forum state is subject to personal jurisdiction for negligence relating to those medical services. *Kennedy v. Freeman*, *919 F.2d 126, 129 (10th Cir. 1990)*. [7] The *Kennedy* court recognized that the forum state has a strong interest in deterring medical malpractice against its residents, and that doctors should not escape suit merely because they perform their service outside the forum state. *Id. at 129-30*. Although [*10] *Kennedy* was a specific jurisdiction case, this court concludes that the same reasoning should hold in a general jurisdiction case. Where a doctor, acting out of state, knowingly, continuously and systematically performs medical services for patients in the forum state, she has purposefully directed her activities to that state and should reasonably anticipate suit in that state. She may therefore be subject to general, as well as specific, jurisdiction.

> 7   "We hold that [defendant] Freeman's actions were sufficient to establish jurisdiction. While Freeman did not solicit [plaintiff] Kennedy's business in Oklahoma, he did purposefully direct his actions there. He willingly accepted the sample from Oklahoma; he signed a report establishing the thickness of lesion; and he evidently sent his bill there. Freeman rendered his diagnosis to Kennedy in Oklahoma, through the mail, knowing its extreme significance and that it would be the basis of Kennedy's further treatment there."
>
> Kennedy should be distinguished from cases where "doctors who have essentially local practices become involved in another state not as a result of their intention to do so, but rather as a result of the action of their out-of-state patients." *Id. at 129*; see *McAndrew v. Burnett*, *374 F. Supp. 460 (M.D. Penn. 1974)* (no jurisdiction in Pennsylvania over New York surgeon where alleged negligent surgery occurred in New York and decedent subsequently moved to and died in Pennsylvania).

[*11]   In the present case, defendant personally examined pap smears from throughout the country, including Massachusetts. She allowed her name to be placed on all reports from ICSL, including those that went to Massachusetts. She knew that these reports rendered diagnoses to patients throughout the country, including those in Massachusetts. As a doctor, she undoubtedly knew of the significance of these reports, and that they would be the basis for further treatment or nontreatment of patients. The court holds that Rosenthal's continuous and systematic activity in Massachusetts was such that she should have reasonably anticipated being haled into court in this commonwealth. Accordingly, the

1995 Mass. Super. LEXIS 494, *

court holds that due process is not offended by the exercise of personal jurisdiction over her.

ORDER

For the reasons stated above, it is hereby OR-DERED that defendant Sharon K. Rosenthal's motion to dismiss for lack of personal jurisdiction pursuant to *Mass.R.Civ. P. 12(b)(2)* is DENIED.



**COMMONWEALTH OF KENTUCKY**
**FAYETTE CIRCUIT COURT**
**DIVISION III**
**CIVIL ACTION NO. 15-CI-4557**

MARTIN LUFTMAN and                                                    **PLAINTIFFS**
VIRGINIA LUFTMAN

**RESPONSE TO DEFENDANTS' MOTION TO DISMISS**

v.

LABORATORY FOR KIDNEY                              **DEFENDANTS**
PATHOLOGY, INC. and
LILIA MAURICIO, M.D.


Plaintiffs, Martin Luftman and Virginia Luftman, by counsel, for their preliminary response to defendants' motion to dismiss for lack of personal jurisdiction, hereby incorporate the arguments contained in their concurrently filed motion for extension of time, scheduled for hearing on Friday, January 15, 2016. Plaintiffs respectfully request that the Court grant a sixty-day extension of time for plaintiffs to file a further response to defendants' motion. During that time, plaintiffs would conduct discovery limited to the issue of personal jurisdiction. Such discovery is necessary to fully respond to the factual assertions in defendants' memorandum and affidavits.

1

*J. Brittany Cross Carlson*
*(by kкo)*

Douglass Farnsley
J. Brittany Cross Carlson
STITES & HARBISON, PLLC
400 West Market Street, Suite 1800
Louisville, Kentucky 40202
Telephone: (502) 587-3400
dfarnsely@stites.com
bcarlson@stites.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served by United States First Class Mail, postage prepaid, on this 8th day of January, 2016 upon:


Steven G. Kinkel
Melanie S. Marrs
Fulkerson, Kinkel & Marrs, PLLC
239 North Broadway
Lexington, KY 40507

*Counsel for Defendants*

*J. Brittany Cross Carlson*
*(by kкo)*

Counsel for Plaintiffs

1065791:1:LOUISVILLE

2