```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
                    **CENTRAL DIVISION at LEXINGTON**
```

| | | |
|---|---|---|
| MARTIN LUFTMAN and | ) | |
| VIRGINIA LUFTMAN, | ) | |
| | ) | |
| Plaintiffs, | ) | Action No. 5:16-cv-14-JMH |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| LABORATORY FOR KIDNEY | ) | **MEMORANDUM OPINION AND ORDER** |
| PATHOLOGY, INC. and | ) | |
| LILIA MAURICIO, M.D., | ) | |
| | ) | |
| Defendants. | ) | |

\*\*   \*\*   \*\*   \*\*   \*\*

This matter is before the Court on the Defendants' Motion to Dismiss for Lack of Personal Jurisdiction [DE 1]. Plaintiffs have filed a Motion for Extension of Time [DE 1], Motion for Jurisdictional Discovery [DE 17], and Motion for Leave to File Supplemental Response [DE 18]. For the reasons stated below, Defendants' Motion to Dismiss will be denied as to Defendant Laboratory for Kidney Pathology, Inc.; that ruling renders the Motion for Extension of Time moot. The Court will grant the uncontested Motion for Leave to File Supplemental Response and consider that additional information herein. The Court will grant Plaintiff's Motion for Jurisdictional Discovery as to Defendant Dr. Lilia Mauricio.

I.   **FACTUAL BACKGROUND**

This action was originally filed in Fayette Circuit Court and removed to this court pursuant to 28 U.S.C. § 1332. Plaintiff Martin Luftman ("Plaintiff") alleges he sought treatment from his physician Dr. Thomas W. Ferguson at Baptist Health in Lexington, Kentucky. Plaintiff underwent a kidney biopsy and Dr. Ferguson sent the pathology slides to Defendant Laboratory for Kidney Pathology, Inc. ("Defendant Laboratory"), in Nashville, Tennessee. Defendant Laboratory returned a report, signed by Defendant Dr. Lilia Mauricio, diagnosing Plaintiff with "Early/Mild Low Grade Focal Segmental Glomerulosclerosis."

Plaintiff alleges that in reliance on Defendants' report, his physicians in Kentucky began a course of treatment and his health deteriorated. After several months, Plaintiff requested Defendant Laboratory send the pathology slides and records to the Mayo Clinic. Plaintiff alleges, upon information and belief, that this request caused another physician at Defendant Laboratory to review the initial report and speak with Defendant Mauricio. Ultimately, Plaintiff alleges, Defendant Mauricio revised the report and forwarded the amended report to Dr. Ferguson. The amended report diagnosed Plaintiff with "Early Lambda Amyloidosis."

Plaintiff filed suit, alleging the Defendants' error in the initial diagnosis caused him pain and suffering, permanent physical injuries, medical expenses, lost wages, emotional distress, and impairment of his ability to labor and earn money.

Plaintiff's spouse, Virginia Luftman, also asserts a loss of consortium claim.

Defendants moved the Court to dismiss, arguing that the courts of Kentucky did not have jurisdiction pursuant to Kentucky's long-arm statute, KRS 454.210. Defendants submitted sworn affidavits of Defendant Mauricio and a representative of Defendant Laboratory. Defendant Laboratory states it is a business organized under the laws of Tennessee, it does not transact business in Kentucky, is not registered to do business in Kentucky, does not advertise in Kentucky, and does not have any offices in Kentucky, among other arguments. Defendant Mauricio similarly states she does not live or work in Kentucky, is not licensed to practice medicine in Kentucky, does not own property in Kentucky, does not advertise her services in Kentucky, and does not transact business in Kentucky.

Plaintiffs filed a Response [DE 16], and a Motion to File a Supplemental Response, which this Court grants herein, with the Supplemental Response attached [DE 18]. Plaintiffs' Supplemental Response included an affidavit from Dr. John F. Jansen, Director of Anatomic Pathology at Baptist Health Lexington in Lexington, Kentucky, where Plaintiff initially sought treatment. Dr. Jansen's sworn testimony is that it is the practice of Baptist Health Lexington Department of Pathology to send "all" kidney biopsy samples to Defendant Laboratory in Nashville, Tennessee,

3

and that this amounts to approximately 80 samples per year, and this has been the practice for more than 21 years.

## II. STANDARD OF REVIEW

Plaintiffs "need only make a prima facie showing of jurisdiction." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996). To meet this burden, they must establish "with reasonable particularity sufficient contacts between [Defendants] and the forum state to support jurisdiction." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002) (citation omitted). In reviewing Defendants' motions to dismiss pursuant to Rule 12(b)(2), this Court relies on the pleadings and affidavits of the parties and construes the facts in the light most favorable to the nonmoving parties, the plaintiffs. *See Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989). "[T]he plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal . . . the pleadings and affidavits submitted must be viewed in a light most favorable to the plaintiff, and the district court should not weigh the controverting assertions of the party seeking dismissal. *Air Prod. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) (internal quotation marks and citations omitted).

This Court may exercise personal jurisdiction over a defendant in a diversity case only if such jurisdiction is (1) authorized by Kentucky law and (2) otherwise consistent with the Due Process Clause of the Fourteenth Amendment. *See Youn v. Track, Inc.*, 324 F.3d 409, 417 (6th Cir. 2003). Kentucky's long-arm statute provides in pertinent part:

> (2) (a) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's:
> 1. Transacting any business in this Commonwealth;
> 2. Contracting to supply services or goods in this Commonwealth;
> 3. Causing tortious injury by an act or omission in this Commonwealth;
> 4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth, provided that the tortious injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the Commonwealth
> . . . .

KRS § 454.210(2)(a).

Kentucky courts construe the state's long-arm statute as coextensive with the limits of due process. *Wilson v. Case*, 85 S.W.3d 589, 592 (Ky. 2002). The Court may exercise jurisdiction over Defendants if personal jurisdiction is consistent with the requirements of federal due process. Therefore, personal

5

jurisdiction exists in the case *sub judice* if Defendants have "minimum contacts" with Kentucky "'such that maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Gateway Press, Inc. v. LeeJay, Inc.*, 993 F. Supp. 578, 580 (W.D. Ky. 1997) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Through its long-arm statute, "Kentucky has elected to assume personal jurisdiction over a nonresident tort-feasor whose activities outside the state result in injury in this state only if that tort-feasor regularly does or solicits business within the state or has other substantial connection to the Commonwealth." *Pierce v. Serafin*, 787 S.W.2d 705, 707 (Ky. Ct. App. 1990), *quoted in Auto Channel, Inc. v. Speedvision Network, LLC*, 995 F. Supp. 761, 764 (W.D. Ky. 1997). The Kentucky Supreme Court has explained that "[i]n practice, the precise language of the statute and the application of its terms are much less important than the simple fact that the statute exists." *Wilson*, 85 S.W.3d at 592. "Courts have determined that 'the long-arm statute within this jurisdiction allows Kentucky courts to reach to the full constitutional limits of due process in entertaining jurisdiction over non-resident defendants.'" *Id.* (quoting *Mohler v. Dorado Wings, Inc.*, 675 S.W.2d 404, 405 (Ky. Ct. App. 1984)).

The Court's exercise of personal jurisdiction is subject to due process limitations. Specific jurisdiction exists where the

claims in the case arise from or are related to the defendant's contacts with the forum state. *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 149 (6th Cir. 1997).[1] The Court addresses three criteria to determine if an exercise of specific jurisdiction is proper. First, Defendants must have purposefully availed themselves of the privilege of acting in Kentucky or purposefully caused a consequence in the state. Next, the cause of action must arise from Defendants' actions in Kentucky. Finally, the exercise of jurisdiction must be reasonable. *See Aristech Chem. Int'l Ltd. v. Acrylic Fabricators Ltd.*, 138 F.3d 624, 628 (6th Cir. 1998); *Southern Machine Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968); *Wilson*, 85 S.W.3d at 592.

A court may not exercise *in personam* jurisdiction if the defendant has not purposefully entered into a connection with the forum state "such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated'

---

[1] General jurisdiction, on the other hand, exists when a defendant's "contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state." *Bird v. Parsons*, 289 F.3d 865, 873 (6th Cir. 2002). Plaintiffs have based their prima facie case of personal jurisdiction on specific jurisdiction.

7

contacts." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)(citations omitted).

## III. ANALYSIS

Reading the facts in the light most favorable to Plaintiff, as the Court must on a Rule 12(b)(2) motion, the Court finds that the fact that Baptist Health Lexington sends approximately 80 kidney biopsy samples—or an average of 1.5 per week—to Defendant Laboratory to be processed and returned is sufficient to exercise specific personal jurisdiction over the Defendant Laboratory.

### a. Kentucky's Long-Arm Statute

The Court holds that processing and reporting on approximately 80 Kentucky kidney biopsy samples per year for 21 continuous years is sufficient to find that Defendant Laboratory "regularly does or solicits business, or engages in any other persistent course of conduct" in Kentucky. Defendant Laboratory, on average once or twice per week for the past 21 years, has processed biopsies from Kentucky, reported on those biopsies, and returned a report to Kentucky. This contact is sufficient to satisfy the "minimum contacts" requirement of long-arm jurisdiction in Kentucky.

The Court also finds there is a significant nexus between Defendant Laboratory's conduct with Kentucky—in this case, in particular Baptist Health Lexington—and Plaintiff's alleged injury. Defendant Laboratory regularly and repeatedly processed

kidney biopsy samples for Baptist Health Lexington, including Plaintiff's kidney biopsy sample. Plaintiffs claim Defendant Laboratory's negligent processing and/or reporting of the results of his kidney biopsy resulted in the damages alleged in the Complaint.

Finally, the Court finds exercise of jurisdiction would be reasonable in this case. The briefs note there are very few medical testing facilities of this type in the country, and likely due to its proximity to Kentucky, Defendant Laboratory does receive samples from Kentucky regularly—at a minimum, around 80 per year from Baptist Health Lexington. It is very possible, if not likely, that discovery on this issue would reveal that other medical providers in Kentucky utilize Defendant Laboratory's services to diagnose the citizens of Kentucky's for kidney condition. Kentucky has an interest in adjudicating a dispute between one of its citizens and a corporate citizen in another state who is providing (perhaps negligently) such a gravely serious service to approximately 80, if not many more, of its citizens each year.

The Court must "liberally construe[]" Kentucky's long-arm statute in favor of jurisdiction; based on the substantial contacts Defendant Laboratory has with Baptist Health Lexington, the Court holds jurisdiction pursuant to the long-arm statute is appropriate. *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 56 (Ky. 2011).

### b. Due Process Concerns

Regarding the due process analysis the Sixth Circuit set forth, the Court similarly finds that the facts alleged by Plaintiff support asserting specific jurisdiction over Defendant Laboratory.

The Court finds Defendant Laboratory "purposefully availed" itself of the jurisdiction of this Court. "The purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)(internal quotation marks and citations omitted). Defendant Laboratory certainly expected to receive and accept around 80 samples from Baptist Health Lexington each year, as it has for the last two decades, to process those samples and return reports of medical expertise to Kentucky; thus Defendant Laboratory should not be surprised it would be subject to the jurisdiction of Kentucky Courts.

As discussed above, it is clear that Plaintiffs' claims for damages "arise from" Defendant Laboratory's activities in Kentucky, namely, its long-standing relationship with Baptist Health Lexington in accepting, processing, reporting on, and returning its numerous kidney biopsy samples each year, including Plaintiff's.

Finally, and for the reasons stated above in Section a., it is not unreasonable for this Court to exercise jurisdiction over Defendant Laboratory. The Court recognizes that Defendant Laboratory's counsel and/or representatives will have to travel to Kentucky to defend this lawsuit; however, the burden is on the defendant to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Air Products and Controls, Inc.*, 503 F.3d 544, 554 (6th Cir. 2007)(quoting *Burger King*, 471 U.S. at 477). Defendant Laboratory has not stated any particular reason it would be unreasonable for its representatives to appear in federal court in Kentucky. The Court notes that since Defendants' removal of this case to federal court, the burden should be minimized, as federal court practice is largely motion practice with electronic filing.

**c. Jurisdiction over Defendant Dr. Lilia Mauricio**

The Court does not have enough information to determine whether the long-arm statute applies to Defendant Mauricio and whether she "purposefully availed" herself to the jurisdiction of Kentucky. As the Courts of the Eastern District of Kentucky have held,

> "jurisdiction over the individual officers of a corporation cannot be predicated merely upon jurisdiction over the corporation." *Balance Dynamics Corp. v. Schmitt Indus., Inc.,* 204 F.3d 683, 698 (6th Cir.2000) (quoting *Weller v. Cromwell Oil Co.,* 504 F.2d 927, 929 (6th Cir.1974)). However, "the mere fact that the

> actions connecting defendants to the state were undertaken in an official rather than personal capacity does not preclude the exercise of personal jurisdiction over those defendants." *Balance Dynamics Corp.,* 204 F.3d at 698. The Court must look at whether the "out-of-state agent is actively and personally involved in the conduct giving rise to the claim" and if so, "the exercise of personal jurisdiction should depend on traditional notions of fair play and substantial justice; *i.e.* whether [ ]he purposefully availed [him]self of the forum and the reasonably foreseeable consequences of that availment."

*Apex Contracting, Inc. v. Charles G. Allen Contracting Co.*, 2012 WL 1983991, at *4 (E.D. Ky. June 1, 2012). The Court cannot make determinations about whether Defendant Mauricio was "actively and personally involved in the conduct giving rise to the claim" without additional information. The Court will grant Plaintiff's Motion to Permit Jurisdictional Discovery as related to Defendant Mauricio.

### IV. CONCLUSION

For the reasons stated herein, and the Court being otherwise sufficiently advised, **IT IS ORDERED** that:

(1) Defendants' Motion to Dismiss [DE 1] is **DENIED**;

(2) Plaintiffs' Motion for Extension of Time [DE 1] is **DENIED AS MOOT**;

(3) Plaintiff's Motion for Leave to File Supplemental Response [DE 18] is **GRANTED**; and

(4) Plaintiff's Motion for Jurisdictional Discovery [DE 17] is **GRANTED IN PART** as to Defendant Mauricio and **DENIED IN PART AS MOOT** as to Defendant Laboratory;

(5) Plaintiffs shall have ninety (90) days in which to conduct discovery on jurisdiction as related to Defendant Mauricio; and

(6) Defendants shall have until January 6, 2017, to renew their Motion to Dismiss for Lack of Jurisdiction as to Defendant Mauricio, but in no event shall any response be due from Plaintiffs until January 27, 2017, unless Plaintiffs choose to file earlier.

This the 30th day of September.

Signed By:
*Joseph M. Hood*
Senior U.S. District Judge